LUEVA YEAZEL, ADMINISTRATRIX, v. M. F. WHITE ET AL.

FILED MAY 2, 1894.   No. 5229.

1. **Execution Sales:** REAL ESTATE. A purchaser of real estate, at a sale thereof on execution, acquires thereby, prior to confirmation only, the lien which the execution debtor had on such land.

2. ——: CONFIRMATION: TITLE OF PURCHASER. Under our law governing sales of real property on execution, the title of a purchaser thereat depends upon a final confirmation of the sale made; and until this is had and a conveyance of the real estate is executed and delivered in pursuance of such confirmation, the legal title of the execution debtor to the real estate is not divested.

3. ——: ——: RELATION. Where real estate is sold on ordinary execution, the sale confirmed and a conveyance made and delivered to the purchaser, the title he thereby acquires relates

back, and such purchaser obtains the same title to the real estate the execution debtor had at the time the judgment under which the land was sold became a lien thereon, except as affected by subsequent tax liens.

4. **But this doctrine of relation** back applies only to the title. It has no neces-ary reference to the *quantum* of the estate which the execution debtor owned at the time the judgment became a lien.

5. **Execution Sales of Real Estate:** TITLE OF OWNER BEFORE CONFIRMATION. The owner of real estate that has been sold on execution retains the legal title thereto, and is entitled to the possession, rents, profits, and usufruct of such real estate until a final confirmation of the sale made.

6. ———: GRASS CUT BY JUDGMENT DEBTOR BEFORE CONFIRMATION: REPLEVIN. A judgment debtor harvested a crop of wild grass from land after it had been sold on execution against him but before the confirmation of the sale. In an action of replevin brought by the purchaser of the real estate at the execution sale for said grass, *held*, that as the grass was severed from the realty before the confirmation of the sale, the title to the grass did not pass to the purchaser of the land.

ERROR from the district court of Hall county. Tried below before HARRISON, J.

The opinion contains a statement of the case.

*Batty, Casto & Dungan,* for plaintiff in error:

The authorities go to the extent of holding that if the fixtures and products of the soil have been sold before severance, and subsequent thereto, and before the severance, the land to which the fixtures are attached should be sold to a *bona fide* purchaser, the fixtures and products of the soil will pass to the purchaser of the land, unless they are reserved in the deed. (Tiedeman, Sales, sec. 59; *Gibbs v. Estey,* 15 Gray [Mass.], 587; *Dolliver v. Ela,* 128 Mass., 559; *Southbridge Savings Bank v. Exeter Machine Works,* 127 Mass., 542.)

The weight of authority seems to support the proposition that the hay, which was shown to be *fructus naturales*

32

by the testimony of both plaintiff and defendant, was part of the soil and must pass with the title of the land. (Freeman, Executions, sec. 113; *Coombs v. Jordan*, 22 Am. Dec. [Md.], 236; *Green v. Armstrong*, 1 Denio [N. Y.], 5⁻0; *Bennett v. Scutt*, 18 Barb. [N. Y.], 347; *Purner v. Piercy*, 40 Md., 212; *Kain v. Fisher*, 6 N. Y., 597; *Crosby v. Wadsworth*, 6 East T. R. [Eng.], 602; *Kimball v. Sattley*, 55 Vt., 285.)

The possession of the sheriff in the case at bar was sufficient. A sheriff or constable levying upon real estate and growing crops appurtenant thereto cannot go into actual manual possession thereof, and it is not necessary that he should. (*Johnson v. Walker*, 23 Neb., 736; *Swift v. Agnes*, 33 Wis., 228.)

When a sale of real estate made under an execution is confirmed, the title relates back to the time of the sale, so that the purchaser can maintain an action in trover or replevin for fixtures or crops *fructus naturales* severed and removed therefrom. (2 Freeman, Executions, sec. 333; *Jackson v. Dickenson*, 15 Johns. [N. Y.], 309; *Osterburg v. Union Trust Co.*, 93 U. S., 424; *Pettit v. Black*, 13 Neb., 157.)

The sheriff's sale, in fact, substitutes the purchaser in place of the landlord, not only as of the time of the sale, but as to his title and interest at the date of the judgment. (2 Freeman, Executions, secs. 333, 348; *Whitney v. Huntington*, 34 Minn., 458.)

The hay in the case at bar was all *fructus naturales*, and before severance was a part of the realty, and could only be sold as a part of the realty, and the lien of the plaintiff in error attached thereto from the date of the filing of the judgment, and by the virtue of the sale of the real property the title to the hay in question passed to the purchaser. (*Lane v. King*, 8 Wend. [N. Y.], 584; *Crews v. Pendleton*, 1 Leigh [Va.], 327; *McLean v. Bovee*, 24 Wis., 295.)

When a levy is made under execution against real prop-

erty, from the time the levy is made to sale and delivery of the deed to purchaser, possession is in the sheriff, and on delivery of the deed the title relates back to the sale, and the purchaser can recover for trover or trespass during the intervening time. (*Frink v. Roe*, 70 Cal., 296; *Keaton v. Thomassons*, 2 Swan [Tenn.], 138; *Sands v. Pfeiffer*, 10 Cal., 258; *Hill v. Gwin*, 51 Cal., 47; 2 Devlin, Deeds, sec. 1434.)

*Capps, McCreary & Stevens, contra*, cited: *State Bank of Nebraska v. Green*, 10 Neb., 135; *Renard v. Brown*, 7 Neb., 449; *Higginbottom v. Benson*, 24 Neb., 463; *Cassilly v. Rhodes*, 12 O., 96; *Beggs v. Thompson*, 2 O., 106.)

RAGAN, C.

On the 9th day of April, 1890, Herman D. Einspahr was the owner of a tract of land in Hall county, Nebraska. On that date there was filed in the office of the clerk of the district court a transcript of a judgment in favor of Abraham Yeazel and against said Einspahr. Execution was duly issued on this judgment; the land levied upon and sold by the sheriff on the 7th day of June, 1890, Yeazel becoming the purchaser. This sale was duly confirmed on July 21, 1890, and on or about that date the sheriff executed to Yeazel a conveyance for the real estate. At the time of the levy upon this land, and at the time of its sale, there was growing thereon a crop of wild grass. After the sale of the land, but before the confirmation, Einspahr cut this grass, removed it from the land and sold it to one M. F. White. After Yeazel had procured his conveyance from the sheriff he brought this action in replevin against Einspahr and White, to recover the possession of the wild grass or hay which Einspahr had taken from the land, as above stated. There was a verdict and judgment in the court below for White and Einspahr, and Yeazel brings this suit here on error. All the material

evidence in the case is undisputed and is embraced in the foregoing statement of facts, and the question is as to the correctness of the verdict and judgment upon that evidence. Counsel for the plaintiff contend:

1. That the wild grass growing upon the land at the time of the execution sale was real estate. For the purposes of this opinion we concede the contention to be correct. We do not decide, however, that growing wild grass is always real estate, nor do we decide that it is personal property. A decision of that point is not necessary here and we do not decide it.

2. That Yeazel, by his purchase of the land on the 7th of June, 1890, at the execution sale, acquired on that date the legal title to the land; and as the wild grass was then growing on the real estate, Yeazel acquired the title to that. We do not agree with this contention. A purchaser of real estate at an execution sale in this state solely by the purchase does not acquire the title of the execution debtor to the land purchased. Such a purchaser acquires simply the lien which the execution creditor had on said land at the time.

By section 497a of the Code of Civil Procedure it is provided that the owner of any real estate against which a decree of foreclosure has been rendered, or upon which an execution has been levied to satisfy a judgment or decree of any kind, may redeem the same from the lien of such decree or levy at any time before the sale of the same shall be finally confirmed. Section 498 provides for the examination and confirmation of such sale by the court. Section 499 provides that upon the confirmation of a sale made of real estate sold on execution the sheriff or other officer who made such sale shall make to the purchaser of such real estate as good and sufficient a deed of conveyance for the property or land sold as the person against whom such writ of execution was issued could have made of the same at the time the land became liable

to the judgment or at any time thereafter.   And section·
500 provides, amongst other things, that the deed so made
shall vest in the purchaser as good and perfect an estate in
the premises as was vested in the execution debtor at or
after the time when the land became liable for the satisfac-·
tion of the judgment.

In *State Bank of Nebraska v. Green*, 10 Neb., 130, LAKE,
J., speaking for this court, said : " Under our law govern-
ing sales of real property on execution the title of the pur-
chaser depends entirely upon the sale being finally confirmed,
and until this is done the rights of the execution debtor
are not certainly divested."    And in *Lamb v. Sherman*, 19
Neb., 681, MAXWELL, C. J., speaking for this court on
that subject, said : "A purchaser at execution sale of real
estate, upon the payment of the purchase money and con-
firmation of the sale, becomes the equitable owner of the
property, and, in a proper case, may compel the issuing of
a sheriff's deed to himself."

In Freeman, Executions, sec. 323, that author, in com-
menting upon the titles of the purchaser and the judgment
debtor before the latter's right to redeem has passed, re-
marks : " It is certain that prior to the execution of the
sheriff's deed the purchaser has no title in the lands pur-
chased.   He cannot recover possession, nor can he, unless
expressly authorized by statute, maintain an action for·
rents and profits.   Frequently his interest is spoken of as
that of a mere lien-holder.   'The purchaser, prior to the
execution of the sheriff's deed, holds merely a lien upon
the land, differing from the lien of the judgment in this,
that it is more specific and may continue after that of the
judgment has expired, and that the lien is much nearer a
complete enforcement than that of the judgment; the sin-
gle act of the execution and delivery of the sheriff's deed
being required.'   But the interest of the purchaser is cer-
tainly something more than a lien.   It seems more like an
inchoate title than like a lien, and it· is generally for the:

purposes, both of voluntary and involuntary transfers, treated like real estate; and while the purchaser has something more than a mere lien, the judgment debtor, until after the expiration of the time to redeem, has an interest different from, and superior to, a mere right or equity of redemption. He is the holder of the legal title, and must in all respects be treated as the owner of the land, even after he has lost his right of redemption, unless a deed has been executed in pursuance of the sale."

In *Curtis v. Millard*, 14 Ia., 128, it was held that "the general purchaser of real property at a judicial sale made under execution acquires only a lien for the amount of the purchase money and interest, which may ripen into a perfect title at the expiration of the time allowed for redemption." This case was cited and adhered to in *Everingham v. Braden*, 58 Ia., 133.

The statutes of Wisconsin on the subject of the sale and confirmation of real estate on execution in force in 1882 were substantially the same as ours, and under those statutes the supreme court of Wisconsin, in *Allen v. Elderkin*, 62 Wis., 627, said: "Under section 3169, Revised Statutes, the title to land sold on the foreclosure of a mortgage does not vest in the purchaser until the confirmation of the sale, and until then the mortgagor, or those claiming under him having the right of possession, may cut and remove all crops which are in condition to be cut and removed in the usual course of good farming." Taylor, J., delivering the opinion of the court, remarked: " The only question in this case is whether the title to the mortgaged property vests in the purchaser at a mortgage sale upon the day of sale and the execution of the deed to the purchaser, or upon the confirmation of the sale by the court. If, the title vests on the sale and execution of the deed, then the circuit court properly directed a verdict for the plaintiff; but if it does not vest until after confirmation of the sale, then the court should have directed a verdict for

the defendant.   *   *   *   The law of this state is plain
and unequivocal, and under it it is clear that the title of
the mortgagor or his assigns is not divested and vested in
the purchaser at a sale upon the foreclosure of a mortgage
given by him until such sale is confirmed."

In view of these authorities it seems clear that the legal
title of Einspahr to the land sold was not divested, nor
did Yeazel acquire the legal title to such real estate until
the delivery to him of the sheriff's conveyance, made
in pursuance of the order of confirmation of the sale.
Yeazel acquired an equitable title to the real estate when
the sale was confirmed, but the legal title did not pass to
him until he received his sheriff's deed.

3. But counsel for the plaintiff in error insist that the
legal title finally acquired by Yeazel to the land he pur-
chased related back to the date the sale was made.  This
is conceded.  Indeed, the title which Yeazel finally ac-
quired related back to the date and the hour that the judg-
ment to satisfy which the land was sold became a lien
upon the real estate; and the conveyance made by the
sheriff to Yeazel vested in him the same title, and as good
a title to the real estate as Einspahr himself possessed at
the time which the judgment became a lien, except as to
subsequent tax liens.  But counsel confuse the title to the
real estate with the *quantum* of the estate.  This doctrine
of relation has reference only to the title which the execu-
tion debtor had to the real estate at the time the judgment
became a lien, but it has no necessary reference to the
*quantum*, whether more or less, of estate which the exe-
cution debtor owned at the time the judgment became a
lien.  The contention of counsel that because the title
which Yeazel finally acquired related back and vested in
him the same title which Einspahr had when the judgment
became a lien, therefore, as the wild grass was growing on
the land at the time the land was sold, Yeazel is owner
of such grass, will be found upon investigation to be un-

tenable. The judgment became a lien upon this real estate from the date of its filing in the clerk's office, and might have so continued for a period of five years. Thus it will be seen that it is in the power of a judgment creditor to maintain a lien against the real estate of his debtor for that period of time without any effort to sell the land. Again, after the sale was made and reported to the court there was no obligation upon the part of Yeazel to have this sale immediately confirmed. Had he chosen to do so, he probably could have postponed a confirmation for a number of years. Now, if counsel is correct, all the wild grass grown upon this land from the time that the judgment became a lien thereon, although the land might not be sold for a number of years to satisfy such judgment, would become the property of the purchaser of the real estate at the sale finally made. It cannot be doubted, we think, that if after this judgment became a lien upon the land, or after the land had been sold on execution, Einsphar had built a house, or erected some other permanent fixture upon the real estate, that such fixture would have passed to the purchaser of the land along with the title he acquired thereto by the sheriff's deed. Yet, if the rule, as to the doctrine of relation, which counsel contend for should be applied, the purchaser at execution sale, should he finally acquire the title to the real estate by the sheriff's conveyance, would not be entitled to the fixtures placed thereon by the execution debtor after the judgment became a lien, or after the sale of the premises. It is not disputed by the learned counsel for the plaintiff in error that Einspahr might have removed a crop of corn or oats from this land at any time before the sale was confirmed, if such crops had been ripe and fit for harvesting; but he claims that this rule does not apply to a crop of wild grass. It is not contended but this grass was ripe for cutting and stacking. It is not contended that the harvesting of this grass by Einspahr was done for the purpose of depreciating

the value of the land.  Suppose that this land had been planted to fruit trees and that the fruit had matured between the time of the sale of the land and the confirmation of the sale.  Can it be contended that Einspahr would not have had the right to gather the fruit and appropriate it to his own use?  Suppose that this land had been covered by a sheet of water, and the water had been frozen, then, no doubt, the ice, while it remained unbroken, would have been real estate.  Can it be said that Einspahr might not have cut such ice and sold it between the time of the sale of the real estate and the confirmation of such sale?  We think that Einspahr was the owner of the legal title to this land until the sale was confirmed; that he was entitled to the possession of it; to the use of it; to the rents and profits thereof; that he was entitled to harvest all fruits and crops thereon, whether the fruits of industry or of nature, that were in a proper condition for harvesting at any time before the confirmation of the sale, and entitled to appropriate to his own use such crops or fruits.  The judgment of the district court is

AFFIRMED.

HARRISON, J., took no part in the opinion.