JOSEPH MCCLENEGHAN, PLAINTIFF, V. CHARLES A. POWELL ET AL., APPELLANTS: CLIFFORD MCCLENEGHAN, APPELLEE.

FILED DECEMBER 4, 1920. No. 21117.

1. Witnesses. A party litigant is bound by statements made in his cross-examination that are at variance with and less favorable to himself than statements made by him in the direct examination on the same subject-matter.

2. **Vendor and Purchaser: DEFERRED PAYMENTS: INTEREST: RENT.** Equity will not permit a vendee to enjoy the rentals that are derived from land for which he has not paid and at the same time permit him to escape payment of interest to the vendor on the unpaid purchase price, unless a tender has been made of such purchase price and kept good.

3. ——: ——: ——: ——. When, in an action for specific performance, a vendee of land recovers judgment against the vendor for rent, he cannot escape payment of interest to the vendor on a deferred payment of the purchase price, unless it clearly appears that he either borrowed or exclusively appropriated the money used for such payment, and that he received no benefit therefrom, and that the money was held continuously, unused and in readiness to be paid to the vendor, with notice to him that it was subject to his order upon fulfilment of his part of the contract of sale.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Modified, and reversed in part, with directions.*

*Murphy & Winters,* for appellants.

*William R. Patrick, contra.*

DEAN, J.

Joseph McCleneghan, plaintiff, was the owner of a real estate mortgage that he foreclosed on 149 acres of land in Douglas county. The land was owned by Charles A. Powell subject to the life estate of his mother, Elizabeth Powell. As party defendants plaintiff joined Charles A. and Catherine Powell, his wife; Elizabeth Powell, his mother; Emil Walstat, tenant then in possession under a five-year lease; First State Bank of Alliance; and Clifford McCleneghan, plaintiff's son. The issues in the present case are raised solely by the cross-petition of Clifford McCleneghan, the answer of the Powells thereto, and the cross-petitioner's reply.

In his cross-petition Clifford McCleneghan prayed for specific performance of a contract for the purchase of the land in suit from the Powells, alleging that he, as vendee, and the defendants, Charles A. Powell and Elizabeth

Powell, his mother, as vendors, entered into a contract May 22, 1917, by the terms whereof he agreed to buy and the Powells agreed to sell and convey the land to him, free of incumbrances, for $21,000, of which $1,000 was paid at the time, the deferred payment of $20,000 to be made March 1, 1918, and possession of the land to be given on that date. Sometime before March 1, 1918, the Powells informed McCleneghan that they could not deliver possession of the land at the time agreed upon, namely March 1, 1918, because defendant Emil Walstat was in possession under a lease from Mrs. Elizabeth Powell that would not expire until March 1, 1921. Subsequently, however, the cross-petitioner obtained title and possession March 1, 1919, so that the controversy herein as to the respective rights of the parties growing out of possession, rentals, and interest on the deferred purchase price, has to do with the year beginning March 1, 1918, and ending March 1, 1919.

Cross-petitioner McCleneghan alleged that he sustained damages because of the Powells' failure to convey the land and deliver possession March 1, 1918, as the contract provided. For the damages so alleged the court found the rental value to be $1,492.50 from March 1, 1918, to March 1, 1919, and for this sum judgment was rendered against the Powells. On February 13, 1919, the court decreed specific performance, and in a supplemental decree, on April 23, 1919, found and decreed that the Powells were not entitled to any interest on the unpaid purchase money from March 1, 1918, until February 25, 1919, that being the date when the remainder of the purchase money was paid into court by cross-petitioner Clifford McCleneghan. The defendants Powell appealed.

Cross-petitioner McCleneghan alleged, and the Powells denied, that the annual rental value of the land in suit was $1,500, and that he sustained damages in that sum because of the failure of the Powells to convey the land and deliver possession March 1, 1918, as the contract provided. With respect to rental value, Joseph McCleneghan

testified on the part of the cross-petitioner that he lived in the vicinity of the land in suit about 29 years; that for the past 15 years he resided in Omaha, where he was engaged in the live stock commission business; that prior thereto he farmed in the Powell vicinity about 20 years; and that the rental value of the farm for the year in question was $10 an acre. It seems that he based his opinion in part on his own general knowledge of rental values and in part upon the rent that he said he could have obtained for the Powell farm from Gus Wedburg, who he said would have rented the land from him if it had been in his possession. Elsewhere in the record it was stipulated that Gus Wedburg, if present, would testify that he would have given $10 an acre rent for the Powell land for the years 1918 and 1919. It seems though that such testimony, even if produced, would have lost much, if not all, of its probative value from the fact that defendant Walstat was in possession of the land for both of those years under the Powell lease. Joseph Gibbons testified that the rental value was about $10 an acre; that he rented an 80-acre farm five miles away to a Mr. McCormick for $10 an acre. McCleneghan and Gibbons were the only witnesses called by the cross-petitioner on this question.

John Mangold testified on the part of defendants respecting the rental value for the year ending March 1, 1919. Both the cross-petitioner and the defendants Powell lay stress on his evidence. The cross-petitioner points out that, while Mangold fixed the rental value at $4 to $5, he testified that "Joe Gibbons got $10 per acre in 1918 for much poorer land and farther from town than the Powell farm." On this point defendants in their brief point out that, when Mangold was asked about the Gibbons land having rented for $10, he said it "was begging for a tenant, but that a Mr. McCormick, who had another farm, had his farm sold out from under him, and he said he had to have something to do that year, so he took a chance at it." Neither party took exception to the statements so made by the other on this point in their respective briefs.

Besides Mr. Mangold, four or five witnesses, resident in the Powell vicinity from seven to twenty years, testified on the part of the defendants respecting the rental value of the Powell farm for the year in question and fixed it at from $4 to $5 an acre. Some were tenants and some were landowners. One tenant paid $800 a year, beginning March 1, 1917, for a ten-year lease on 180 acres. Another paid $4 an acre. One of the rented tracts was separated from the Powell land by a railroad. A real estate dealer testified that $659 would be a fair rental value. It may be added that Mr. Walstat paid $650 rent for the land in question for the year ending March 1, 1919. It has been held that the selling price of land is some evidence of its value. *Engel v. Tate*, 203 Mich. 679. No reason appears in the record to show why the same principle should not apply to the rental value of the land in question. We conclude that the weight of the evidence fairly shows that the cross-petitioner's recovery should have been $5 an acre, that being a reasonable rental value for the Powell farm for 1919.

Joseph McCleneghan, who acted for his son in the purchase of the land, was the only witness in the controversy over the payment of interest. It seems that on March 1, 1918, he tendered to the defendants Powell two certified checks, exhibits 2 and 3, aggregating $20,000, that were subsequently withdrawn, as McCleneghan testified, "because you (the Powells) couldn't give possession." On this important feature of the case the cross-petitioner, quoting Joseph McCleneghan's direct examination, says in his brief: "As to whether the Powells were entitled to set-off interest on purchase money against damages for breaching their contract. Joseph McCleneghan testified, pp. 22, 23: Q. Now, Mr. McCleneghan, what is the fact as to whether or not—what was subsequently done with the money, the $20,000 represented by these two checks, exhibits 2 and 3? A. Well, I held it ready to make the payment when they conveyed the property. Q. And had this $20,000 at all times been ready to be turned over to the Powells at any

McCleneghan v. Powell.

time they saw fit to carry out the terms of their contract of sale with Clifford McCleneghan? A. Yes, sir. Q. Has Clifford McCleneghan. or yourself received any interest upon said $20,000 or any benefits from the use of it since the 1st day of March, 1918, up until the entry of the decree of this case on February 13, 1919? A. No, sir." The record shows that on the cross-examination he testified: "Q. Now, where did you get this $21,000—the Live Stock Bank? A. Yes, sir. Q. In the shape of a cashier's check? A. Certified check. Q. Did you borrow the money? A. I did part of it; yes, sir. Q. And you assigned this contract to get it? A. I did. Q. How long did you keep it? A. Well, I think two or three days. Q. As a matter of fact, you just went in the bank and made arrangements with the Live Stock Bank to get these cashier's checks for the purpose of making the tender? A. Yes; if you will let me go into detail and tell you—Q. I am asking you that question. A. In the first place I went to the Federal Loan and borrowed $10,000. Q. Made an application to borrow it? A. Yes, sir; and the money was ready and they held that for four months. Q. That was held on account of some defects in the title? A. Yes, sir. Q. By March 1 that was all wiped aside and they were going to make the loan? A. They were, and they held the money. Q. You simply went in the bank and borrowed the money for a few days in order to make this deal? A. I gave them a note for it. I didn't know but what you fellows would try to take snap judgment on me, and that note was down there awhile."

On the question of interest the evidence is not satisfactory. Joseph McCleneghan was the only witness on this point and knew all about this feature of the case, but his evidence, when considered in its entirety, is evasive and obscure. At one point in his cross-examination he testified that the borrowed money was kept "two or three days." Later he testified that he either borrowed or made an application to borrow $10,000 from the Federal Loan Bank, and that "the money was ready and they held that

for four months." If McCleneghan paid interest on or after March 1, 1918, for money that he borrowed to make the deferred payment in question he should have said so in plain language when given opportunity on the cross-examination. He did not do so. It is obvious that if he paid four months' interest before March 1, 1918, for money borrowed to make the deferred payment, the Powells were not .liable for such interest because the money was not payable before that date. The statements made in the cross-examination do not support his statements in the direct examination.

The cross-petitioner elected to sue for the rental value and then sought to evade the payment of interest. Equity will not permit a vendee to enjoy the rentals that are derived from land for which he has not paid and at the same time permit him to escape the payment of interest to the vendor on the unpaid purchase price unless a tender has been made of such purchase price and kept good. *Craig. v. Greenwood,* 24 Neb. 557; *Jordan v. Jackson,* on rehearing, 76 Neb. 26. Evidently the court found against the defendants with respect to interest on the theory that the cross-petitioner, or those acting for him, had either borrowed or exclusively appropriated $20,000 and that the money was held continuously from March 1, 1918, unused and in readiness to be paid to the defendants Powell upon fulfilment of their part of the contract, and that the Powells had knowledge of this fact. But this state of facts does not appear in the record. Hence we conclude the defendants Powell are entitled to the lawful rate of interest upon $20,000, the deferred purchase price, from March 1, 1918, until February 25, 1919, that being the date when it was paid into court.

The rule in this class of cases, and one that conforms to equitable principles, is well stated in *Bostwick v. Beach,* 105 N. Y. 661, wherein this was said by the court: "Where specific performance of a contract for the sale of land is decreed, the court will, so far as possible, place the parties in the same position they would have been in if the con-

McCleneghan v. Powell.

tract had been performed at the time agreed upon. The vendor is regarded as trustee of the land for the benefit of the purchaser and liable to account to him for the rents and profits or for the value of the use and occupation, and the purchaser, as trustee of the purchase money unpaid and chargeable with interest thereon, unless it has been appropriated and no benefit has accrued to him from it."

In *Beckwith v. Clark,* 188 Fed. 171, the court held: "The general rule is that from the time when a contract of sale of land should be performed the land is in equity the property of the vendee held by the vendor in trust for him, and the purchase price is the property of the vendor held in trust for him by the vendee, and that upon specific performance the vendor is liable to account for the rents and profits and the vendee for the interest on the purchase price. There is this exception to the rule: That where the vendor fails or refuses to convey at the time for performance, and the vendee, to the knowledge of the vendor, deposits and keeps the purchase price subject to the order of the vendor upon his delivery of his deed, and derives no benefit from it, the vendor must account to the vendee for the rents and profits of the land, but the vendee is not liable for the interest on the purchase price." To substantially the same effect is *Powell v. Martyr,* 8 Ves. Jr. Ch. Rep. (Eng.) 146; 36 Cyc. 754, 755.

We have examined the case *de novo.* The judgment with respect to rent is modified to conform to the views expressed herein. The judgment against the defendants Powell on the question of interest is reversed, with directions that a judgment be entered in their favor in conformity with the views expressed in this opinion on that subject.

JUDGMENT ACCORDINGLY.