RONALD H. PATTERSON ET AL., APPELLANTS, V. SPELTS LUMBER COMPANY OF GOTHENBURG, A CORPORATION, APPELLEE.

90 N. W. 2d 283

Filed May 31, 1958. No. 34315.

*William S. Padley,* for appellants.

*Arthur C. Mayer,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This case originated as an action to quiet title against the cloud of a mechanic's lien. Defendant, resisting the action, cross-petitioned for the foreclosure of the lien. Issues were made and trial was had. The trial court denied the petition of the plaintiffs, granted the cross-petition of the defendant, and rendered a decree of foreclosure. Plaintiffs appeal.

We reverse the judgment of the trial court and remand the cause with directions.

The plaintiffs are husband and wife and owners of the property involved. Unless otherwise stated, they will be referred to as the plaintiffs.

The defendant is a corporation. We will refer to the defendant as such and, where necessary, to the officers of defendant.

The fact issues are here for trial de novo.

The first question presented is that of the validity of the lien. We state the facts necessary to a determination of that matter.

Plaintiffs entered into an oral contract with defendant whereby defendant agreed to build a house for plaintiffs. The contract included the cost of the lot, materials, and labor. The house was completed before January 1, 1956. Plaintiffs occupied it as a finished house before Thanksgiving of 1955. On the itemized account in the mechanic's lien there are items charged in January 1956. It appears, also without dispute, that the sidewalks were constructed in March 1956, and material and labor were charged for at that time.

The house was a split level, one-story house with a basement under the higher elevation. The contract did not provide for a finished basement. There was left in the foundation connecting the basement with the

unexcavated part under the house an opening described as a crawl hole. During the winter of 1955-56 cold air from the unexcavated area entered the basement. Mrs. Patterson desired to have it closed. In September 1956, Mr. Patterson went to the defendant and it, at his request, sent a carpenter with material to put a door in this opening. The total charge for this was $6.52 made on September 18, 1956.

On October 30, 1956, defendant filed a mechanic's lien for the sum of $4,626.20. So far as this claim is concerned, section 52-103, R. S. Supp., 1955, requires that it be filed within 4 months of the time of performing the labor or furnishing the material. It is patent that the validity of the lien depends, so far as the amount of $4,619.68 is concerned, upon the right of the defendant to tack the earlier large balance upon the small balance incurred in September 1956.

There is nothing in the evidence that the putting of a door on this opening was ever within the contemplation of the parties as a part of the contract. One of defendant's witnesses testifed that it was just one of those things that they never got around to doing. However, there were extended conferences in July 1956 as to what amount, if any, plaintiffs owed the defendant. There appears to have been nothing developed in those conferences relative to the fact that the construction had not been completed in this or any other regard. Defendant offered the evidence of a witness who had been its assistant manager during the time of the construction of this house. He testified that he had never been instructed to do this work before September 1956; that he did it then because Mr. Patterson ordered it done; and that it was just a little extra job that Mr. Patterson wanted and he did it. Under these circumstances, the rule as stated in Rivett Lumber & Coal Co. v. Linder, 113 Neb. 567, 204 N. W. 77, is applicable. It is: The mechanics' lien law does not enable a materialman or laborer to tack one contract to another by filing one

statement which secures a lien for material and labor furnished under one contract, and at the same time secure a lien for material and labor under another contract as to which he has not complied with the statute.

It necessarily follows that the mechanic's lien of the defendant is valid for only the sum of $6.52. The judgment of the trial court is reversed as to that and the cause remanded with directions to render a decree foreclosing the lien, if not paid, for the sum of $6.52 with interest at 6 percent from March 18, 1957.

The next question presented has to do with the decree of the district court which found that there was due the defendant from the plaintiffs the sum of $4,-626.20 without interest; decreeing a sale of the property to pay the same; and providing for a deficiency judgment.

The question is: How much, if anything, do the plaintiffs owe the defendant in addition to the $6.52?

It is a long-established rule that a court of equity which has obtained jurisdiction for any purpose will retain jurisdiction for the purpose of administering complete relief between the parties with respect to the subject matter. Gibson v. Koutsky-Brennan-Vana Co., 143 Neb. 326, 9 N. W. 2d 298.

The rule is stated that ordinarily a personal judgment in favor of a mechanic's lien claimant may be rendered although he fails to establish his alleged lien. 57 C. J. S., Mechanics' Liens, § 329, p. 1014; 36 Am. Jur., Mechanics' Liens, § 283, p. 172.

Defendant alleged in its cross-petition that "plaintiffs and defendant entered into an oral agreement whereby defendant agreed to furnish plaintiffs a building lot and construct a certain dwelling house on said lot; that plaintiffs agreed to pay defendant upon completion of said dwelling the fair and reasonable cost of said lot and dwelling; that defendant constructed said dwelling and conveyed to plaintiffs title to said lot, and has performed all the conditions of said agreement on its part to be performed." Defendant further alleged

that the fair and reasonable value of the lot, labor, and materials furnished was $15,378.83, less materials returned of $296.85; and that plaintiffs had paid the sum of $10,455.78, leaving a balance due of $4,626.20 for which, with interest, it claimed judgment.

Plaintiffs in answer to the cross-petition alleged that they agreed to pay the amount of a loan of $11,000 and to pay for any extras which they required.

It will thus be seen that plaintiffs alleged a contract by which the completed house and lot was to cost them $11,000, plus extras. The defendant alleged a basis of recovery in quantum meruit.

What was the contract that was proven?

The evidence as to the contract provisions is not set out at any one place in the testimony. Taking the testimony as a whole we have concluded that the contract contained these elements:

Defendant had built a house similar to that contemplated by this agreement. The house was to be built similar to that house. There is no issue raised here as to that. There was discussion as to cost price, including the lot, which related it to the figure of $11,000 to $11,500. However, we find no evidence which is conclusive that sustains plaintiffs' contention that the house was to be built for a fixed price plus extras.

The evidence sustains defendant's contention that in addition to the price estimated, there would be added what the parties refer to as a "slop-over" or "overflow."

It appears that defendant was to secure for plaintiffs a building and loan association mortgage loan of $11,000 to $11,500 on the house and that the "slop-over" was to include the items of cost that would not be paid by the loan. The amount of such excess was an undetermined and, at the time, undeterminable amount.

The rule is that where there is no contract to pay a definite sum for the erection of a building the amount the builder is entitled to recover for material and labor

is their reasonable market value. Bates v. St. Anthony's Church, 111 Neb. 426, 196 N. W. 638.

What, then, was the reasonable value of the materials and labor furnished by the defendant?

We can and do determine certain of these matters from the facts which are in this record. As to other items we have concluded that equity requires a remand and retrial.

We consider first the determinable items.

Plaintiffs negotiated for the purchase of the lot at the price of $1,000. Plaintiffs paid $200 of the purchase price. Defendant paid $800 of the purchase price. There is no contention here but that defendant is entitled to credit for the $800 so paid. Defendant is entitled to recover that item.

Defendant subcontracted certain parts of the construction.

The contract price for carpenter work was $2,170. Defendant paid that amount to the subcontractor. Defendant, however, added a charge of 10 percent to this item and charged plaintiffs therefor the sum of $2,387. The subcontractor for carpeting and floor covering charged and was paid $1,590.10 by defendant. To this item the defendant added a charge of $114.90, making the total charge $1,705. The subcontractor for the heating, plumbing, and gutterwork was paid $1,826.88. Defendant added to this amount a charge of 10 percent, making the total charge $2,009.56. The subcontractor for the plastering charged and was paid $413.16. The defendant charged the plaintiffs $454.56.

Plaintiffs testified that they had no objection to the charges for the amounts paid to the subcontractors. They do object to the added charge over and above amounts paid for these items of work and materials. There is no evidence that the contract contemplated such a charge. It affirmatively appears in defendant's evidence that plaintiffs were not advised that the defendant would add these percentages to the subcon-

tractors' bills. Here defendant obviously attempted to change the obligation of the plaintiffs to pay the reasonable cost of this house to one to pay the reasonable cost plus a percentage of the cost as profit. There is no basis for such an allowance in this record. Defendant is not entitled to recover the percentages added. They are to be denied. Only the actual amounts paid the subcontractors are to be allowed. See Grothe v. Erickson, 157 Neb. 248, 59 N. W. 2d 368.

Defendant charged $556.48 to the plaintiffs for payments to the electrical subcontractor. The subcontractor testified that he was paid $457.57. Defendant testified that he was paid $524.47. No attempt was made to verify either statement by other proof. As to this item evidence should be taken to establish the amount actually paid by the defendant on this subcontract. That amount should be allowed. For the reasons above given the overcharge should be denied.

Defendant offered evidence that it charged the plaintiffs $772.71 for labor other than carpentering. No attempt was made to show any details of this charge. The court, over objection, permitted evidence that the total so stated was a fair and reasonable charge. Whether or not there was an overcharge made by the defendant for this labor is left in doubt by the evidence. As to this item the trial court should require evidence establishing the items of labor included in this total and the reasonable value thereof. The defendant should be permitted to recover any amount so established and paid by it. Here, for the reasons above given, the defendant is not entitled to recover any added charge.

Over objection defendant offered evidence that it charged to the plaintiffs for material furnished in the construction of this house a total of $6,694.26 and that there was a credit for merchandise returned of $296.85, leaving a balance which it claimed of $6,397.41 for materials furnished. The items making the above total were listed in the mechanic's lien which was admitted

in evidence. It affirmatively appears that all materials used in constructing the house were furnished by the defendant. However, defendant did not establish that the materials so charged were in fact delivered to and used in the construction of the house. Defendant undertook to show that the charges so made were fair and reasonable. However, on cross-examination defendant's manager testified that the prices were fair and reasonable "Because those were our prices." Just before the above answer was given on cross-examination, the trial court had sustained an objection to the question: "Were your prices competitive with the other lumber yards in Gothenburg?"

Defendant put on the stand a lumber dealer from Lexington, who was asked to state his opinion as to whether the prices charged were fair and reasonable. His answer, given over objection, was: "* * * they are within cents of what we would charge for the same thing." Prompted by the court, he said: "It is fair and reasonable, as near as I can tell." The trial court sustained an objection to a question as to whether the regular retail price would be different on one item than on an entire bill of material. The witness finally testified that there "are reasons for changing the price." Other evidence shows that it is customary in the lumber business that "any house job or any large bill would carry a discount."

In the light of this unsatisfactory condition of the evidence as to the reasonable value of the materials furnished by defendant, we have concluded that the issue is to be retried.

The issue as to the amount the defendant is entitled to recover for materials furnished is accordingly to be retried both as to the question of the materials furnished and the reasonable value thereof, taking into consideration that the sale here was for all the materials used and not a sale of individual items as such.

Any items not herein specifically mentioned are for retrial.

The defendant, under the issues here made, has the burden of proof.

One other matter requires specific mention. A mortgage for $11,000 was placed upon this property by the plaintiffs. The evidence shows that at various times the mortgagee issued checks payable to the defendant and the plaintiffs and that those checks were endorsed by the plaintiffs and delivered to the defendant. It appears that defendant received and gave the plaintiffs credit for $10,455.78 for payments so made. Plaintiffs are entitled to credit for that amount. However, there is no showing as to whether or not the defendant received any part of the remaining $544.22 of the mortgage funds. Evidence should be taken to determine if the defendant received any part of that remainder as payment on the contract and, if so, plaintiffs should be given credit therefor.

It is suggested that the questions herein remanded for a new trial may properly be the subject of a pretrial conference.

If upon retrial it is determined that defendant is entitled to receive additional payments from the plaintiffs, then the question of the time of payment and interest will arise. We deem it advisable to determine that matter now for the guidance of the trial court. The provisions of the contract between the parties require it.

It was agreed by the parties when this contract was entered into that the plaintiffs would not be required to make a down payment; that all of the costs of the house were to be paid for like rent is paid; and that whatever amount was charged for "slop-over" would be handled by monthly payments to the defendant and without interest.

There is no evidence that the number of monthly payments was mentioned. However, it is obvious that the payments flowing from the building and loan association mortgage fund were payable over a fixed number of months. There is only one debt to be paid in monthly installments. We think it equitable that the payment

of the overflow should be in the number of installments agreed upon for the payment of that part of the debt paid by the building and loan association fund. In the absence of an agreement to the contrary the same formula for repayment as to the number of installments should be followed.

Accordingly the trial court is directed to receive evidence and determine the number of months which the building and loan association contract provides for the repayment of the fund so secured.

The amount found to be due the defendant, if any, is to be divided by that number of months and the result becomes the monthly installment which the plaintiffs shall pay to the defendant until the full sum is so paid.

The trial court is likewise directed to receive evidence and determine the time when the first monthly payment was due and payable to the building and loan association. The monthly installments, payable by the plaintiffs to the defendant, shall be fixed as beginning as of that time. The total amount of the payments so determined as of the date of the decree shall be found to be then payable and the decree shall award defendant judgment therefor. The remainder of the installments shall be fixed as accruing and payable monthly thereafter so as to coincide with and be paid consistent with the building and loan association contract payments.

The evidence shows without dispute that plaintiffs, beginning with the time they accepted possession of the house, tried to secure a statement from the defendant as to the additional amount, if any, that was due the defendant. They were never advised of the exact total claimed until the mechanic's lien herein was filed. Efforts were made to negotiate a formula of settlement. Those efforts failed because the defendant refused to abide by the agreement that the "slop-over" balance should be paid without interest.

Section 45-103, R. R. S. 1943, provides that interest on all decrees and judgments for the payment of money

shall be from the date of the rendition thereof. However, we have held that this language refers to judgments on decrees for money which is immediately due and collectible where its nonpayment is a breach of duty on the part of the judgment debtor. See Dike v. Andrews, 80 Neb. 455, 114 N. W. 582. We there held that interest should be computed on installments from their date of maturity until paid.

Obviously the plaintiffs by the agreement should not be required to pay interest on the total amount of the "slop-over" from the date of the determination of the amount of the "slop-over." A court of equity has a reasonable discretion to allow or withhold interest as is reasonable and just, except in cases where interest is recoverable as a matter of right. 47 C. J. S., Interest, § 3, p. 13.

Accordingly the decree shall provide that plaintiffs shall pay interest at the legal rate on the amount decreed to be due and payable as provided herein from the date of the decree only; and plaintiffs shall pay interest at the legal rate on the remaining installments only in the event they become delinquent and then only from the date of the beginning of the delinquency.

All costs of this action, in this court down to and including the mandate filed as a result of this decision, are to be taxed to the defendant.

The judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.