STEWART W. KLEEB, APPELLEE AND CROSS-APPELLANT, v.
ALLENE D. KLEEB, WILMA A. ASKEY, ARDEN L. ASKEY,
VELMA JEZBERA, and FRANK JEZBERA, APPELLEES,
KENNETH LAURITZEN, APPELLANT AND CROSS-APPELLEE.
330 N.W.2d 484

Filed February 18, 1983. No. 82-385.

Jim R. Titus of Peterson, Bowman & Johanns, for appellant.

Ronald D. Svoboda and David V. Chebatoris of Clements, Svoboda & Chebatoris, for appellee Stewart Kleeb.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and MORAN, D.J.

538

KRIVOSHA, C.J.

This is the second appearance of this case before this court. Originally, this case was before us concerning the question of whether a partition action was properly conducted. The facts of the case are reported in our earlier opinion and may be found at 210 Neb. 637, 316 N.W.2d 583 (1982). This appeal concerns itself with the question as to who should be entitled to the landlord's share of the crops earned for the years 1980 and 1981 while the case was on appeal. Having now reviewed the record, we believe that the trial court should not have awarded the crops to the original owners and we therefore reverse the judgment.

On June 6, 1980, the trial court confirmed the judicial sale in question and ordered the property conveyed to the purchaser, Kenneth P. Lauritzen (purchaser). Owners Wilma E. Askey and Arden L. Askey (Askeys) filed a notice of appeal and what purports to be a supersedeas bond. Additional owners, Stewart W. Kleeb, Allene D. Kleeb, Velma Jezbera, and Frank Jezbera, did not join in the appeal, but all, including the Askeys, will be referred to herein as "original owners."

During the pendency of the appeal the referee properly leased the real estate for farming on a sharecrop arrangement, resulting in net rental income from the property for the years 1980 and 1981. Following our affirmance in the first case on February 26, 1982, the trial court entered an order which provided in part that the original owners were to pay the real estate taxes for the years 1980 and 1981 and were therefore to receive the landlord's share of the crops for the years 1980 and 1981. The trial court also ordered that the interest earned on the downpayment held by the referee during the time of appeal should be paid to the purchaser. Because the question of interest on the unpaid balance was not presented to the trial court, it made no finding in that regard. Lauritzen assigns as error the

trial court's awarding of the landlord's share of the crops to the original owners. Although the original owners did not initially seek interest on the unpaid balance, appellee Stewart Kleeb now asserts for the first time in this court, by way of cross-appeal, that they should be entitled to interest on the unpaid balance of the purchase price.

In order to determine whether the action of the trial court was correct, we must resolve two questions. The first question is, What was the status of the case just before the appeal was taken? The second question is, What was the effect of the filing of the supersedeas bond by the Askeys?

With regard to the first question, the answer is relatively simple. Absent the filing of a notice of appeal, the purchaser in this case would have been entitled to the crops for the years 1980 and 1981 and would have been obligated to pay the expenses, including the real estate taxes. The sale bill contracted for that result. In advertising the sale, the referee provided in part as follows: "POSSESSION: Buyer takes full possession of mineral rights and buyer takes owner's interest in 1980 crops at the time balance is paid. Seller to pay 1979 ($1,214.03) and all prior real estate taxes. Purchaser pays 1980 taxes." Regardless of what the law may be as to the appropriate division between buyer and seller at a judicial sale where nothing is said, the parties in this case contracted, as they were entitled to do, as to how the crops and expenses were to be handled. In judicial sales the court is the vendor, *State Bank of Nebraska v. Green,* 8 Neb. 297, 1 N.W. 210 (1879), and generally may set such terms not otherwise unlawful. Without regard to when the sale was to take place or the confirmation obtained or the deed conveyed, the purchaser was to pay the taxes for the year 1980 and, presumably then, for all subsequent years, and was likewise to receive the crops for the year 1980 and, presumably, all subsequent years. Absent the filing of a notice of appeal and, more

importantly, absent the giving of a purported supersedeas bond, there would be no question as to how this case should be resolved.

What then was the effect of the giving of the supersedeas bond by the Askeys? Did the giving of the bond in effect set aside the judgment entered by the trial court on June 6, 1980, or did it merely suspend the enforcement of the judgment until we affirmed the trial court's action on February 26, 1982?

On June 6, 1980, after notice and hearing, the trial court specifically confirmed the sale to the purchaser and ordered the referee to convey said premises to the purchaser by deed. On June 6, 1980, the purchaser became the equitable owner of the property, *Lamb v. Sherman,* 19 Neb. 681, 28 N.W. 319 (1886); *Yeazel v. White,* 40 Neb. 432, 58 N.W. 1020 (1894), and, pursuant to the court's order and the previous representation made by the referee in the sale notice, became entitled to the 1980 crops and was obligated to pay the 1980 taxes. We think it clear from both a reading of the statute providing for the giving of a supersedeas bond, Neb. Rev. Stat. § 25-1916 (Reissue 1979), and our previous holdings that the giving of the supersedeas bond does not set aside a previous order of the court but merely suspends its enforcement.

In *Guaranty Fund Commission v. Teichmeier,* 119 Neb. 387, 391, 229 N.W. 121, 123 (1930), we noted: "The general rule is that the effect of a supersedeas bond is to suspend proceedings and preserve the *status quo* pending the determination of the appeal. It suspends all further proceedings on the judgment or decree appealed from, but does not, like a reversal of the judgment by this court, annul the judgment itself." And in 4A C.J.S. *Appeal and Error* § 662 at 497 (1957), the author notes: "As a rule, a supersedeas or stay does not reverse, annul, or undo what has already been done, or impair the force, or pass on the merits, of the judgment, order, or decision of the trial court; and in most jurisdictions the

judgment, order, or decree is not vacated or annulled, nor is its validity or effect impaired thereby." We are such a jurisdiction. To hold otherwise would be to totally ignore the function of a supersedeas bond. Were we to take the position urged upon us by the appellee Stewart Kleeb, one could appeal such a case, file a supersedeas bond and, after the crops had been raised and harvested, dismiss the appeal without liability and contrary to the clear language of the sale bill. The filing of the supersedeas bond in this case did not reverse the order of the trial court entered on June 6, 1980, nor did it affect the commitment made by the parties in the sale bill. As a matter of fact, our opinion filed in this case on February 26, 1982, did not confirm the sale, as urged by appellee Stewart Kleeb, but, rather, affirmed "the order of the District Court confirming the sale to appellee Lauritzen and ordering the referee to convey the premises to him . . . ." All that our decision did was to affirm what the trial court had already done and remove the stay which was preventing the referee from acting in accordance with the previous order of the trial court. The trial court therefore should have directed that the landlord's share of the crops earned for the years 1980 and 1981 be paid to the purchaser and that the purchaser likewise be obligated to pay the landlord's share of the expenses, including the payment of real estate taxes incurred for the years 1980 and 1981. For the same reasons, it follows that the interest earned on the downpayment must be paid to the referee for distribution to the original owners.

That leaves us with the final question of whether the purchaser herein should be required to pay interest on the balance of the purchase price from the date of confirmation to the present. Unfortunately, the original owners did not raise that issue before the trial court and did not afford the trial court the opportunity to pass upon it. More importantly, how-

ever, the parties offered no evidence on this question. The general rule in regard to this matter is fairly clear, as expressed by our decision in the case of *McCleneghan v. Powell,* 105 Neb. 306, 312, 180 N.W. 576, 579 (1920), wherein we said: "Equity will not permit a vendee to enjoy the rentals that are derived from land for which he has not paid and at the same time permit him to escape the payment of interest to the vendor on the unpaid purchase price unless a tender has been made of such purchase price and kept good." The only evidence concerning the tender is a stipulation entered into by all the parties to the effect that at all times relevant the purchaser was "ready and willing and able to pay the full amount of the purchase price." Obviously, his inability to pay was due to the fact that the Askeys had filed a supersedeas bond preventing the referee from executing and conveying a deed to Lauritzen, thereby requiring Lauritzen to make payment. The very terms of the sale gave to Lauritzen a choice of paying upon confirmation *or* when merchantable abstract and deed *were delivered.* The purchase price was not due and payable until the deed was delivered and that did not happen until after the mandate was issued by this court.

Appellee Stewart Kleeb argues that, this being an equitable action, we have reasonable discretion to allow or withhold interest as is reasonable and just under the circumstances. See *Patterson v. Spelts Lumber Co.,* 166 Neb. 692, 90 N.W.2d 283 (1958). The difficulty with that argument is that had the Askeys not superseded the judgment and prevented the payment of the balance, payment would have been forthcoming upon delivery of the deed. It was the Askeys' act which authorized Lauritzen to withhold payment. Likewise, we are totally without any evidence to determine whether purchaser was obligated to make any payments to anyone else during this time in order to keep the proceeds on reserve for payment when needed or whether he gained any

benefit by reason of the delay. One may surmise as to the facts, but it is difficult, if not impossible, to do equity absent evidence and based solely on surmise. We therefore find that the judgment of the trial court directing that the landlord's share of the crops for the years 1980 and 1981 be paid to the original owners, subject to their paying the real estate taxes for those years, should be reversed, and the proceeds instead should be ordered paid to the purchaser, subject to his paying the real estate taxes for the years in question. We likewise reverse that portion of the trial court's order directing that the interest on the downpayment be paid to the purchaser and direct that the interest be paid instead to the referee for distribution to the original owners. We make no order regarding the request that the purchaser be ordered to pay interest on the unpaid balance.

The judgment of the trial court is reversed and the cause remanded with directions to enter judgment in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

WHITE, J., concurs in the result.

BOSLAUGH, J., dissenting.

The order of the trial court, while perhaps erroneous, was at least equitable. The majority opinion fails to do equity between the parties because it awards both the use of the unpaid purchase price and the income from the land to the purchaser.

From the time when a contract of sale of land should be performed the land is, in equity, the property of the vendee held by the vendor in trust for him, and the purchase price is the property of the vendor held in trust for him by the vendee. Upon specific performance the vendor is liable to account for the rents and profits and the vendee for the interest on the purchase price. *Russell v. Western Nebraska Rest Home, Inc.,* 180 Neb. 728, 144 N.W.2d 728 (1966).

In *McCleneghan v. Powell,* 105 Neb. 306, 180 N.W. 576 (1920), cited in the majority opinion, the vendor

recovered interest on the unpaid balance of the purchase price. That case does not support the result reached by the court in this case. Under the rule of the *McCleneghan* case, the purchaser in this case should be required to account to the owners for interest on the unpaid balance of the purchase price.

In the *McCleneghan* case we held that the vendor was entitled to interest on the unpaid balance of the purchase price because *the evidence of the vendee* failed to show that the vendee had either borrowed the money or held it unused for the benefit of the vendor. Because the evidence did not show that McCleneghan "had either borrowed or exclusively appropriated $20,000 and that the money was held continuously from March 1, 1918, unused and in readiness to be paid to the defendants Powell upon fulfilment of their part of the contract," the defendants Powell were entitled to interest at the lawful rate from March 1, 1918, until the date the money was paid into court. *Id.* at 312, 180 N.W. at 579.

A mere tender or offer to perform is not enough to excuse the vendee from accounting for interest on the unpaid balance of the purchase price during the delay in performance. The evidence must show that the money was "appropriated" to the contract and "no benefit has accrued" to the vendee from the unpaid money before the vendee can avoid accounting to the vendor for interest on the purchase price.

In this case the evidence falls far short of satisfying the rule of the *McCleneghan* case. The parties merely stipulated that the vendee "was ready and willing and able to pay the full amount of the purchase price." There is no showing that the vendee had borrowed the money and was paying interest on it, or had "appropriated" the money and derived no benefit from it.

If the income from the property is to be awarded to the purchaser, he should be required to account for interest on the unpaid balance of the purchase price.

McCown and Hastings, JJ., join in this dissent.