THE CONSERVATIVE SAVINGS AND LOAN ASSOCIATION OF OMAHA,
NEBRASKA, A CORPORATION, APPELLANT, V. HAROLD H. KARP
AND MAURINE E. KARP, HUSBAND AND WIFE, ET AL., APPELLEES,
ARLO HANSON, INTERVENOR-APPELLEE.

352 N.W.2d 900

Filed August 3, 1984.   No. 83-644.

Michael G. Lessmann and Richard E. Putnam of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellant.

Edward F. Pohren of Dwyer, Pohren & Wood, for intervenor-appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, and SHANAHAN, JJ.

PER CURIAM.

This appeal arises out of an action brought by The Conservative Savings and Loan Association of Omaha to foreclose a deed of trust. Arlo Hanson, the intervenor-appellee, was the successful bidder at the sheriff's foreclosure sale. Cross-motions for summary judgment were filed. Conservative appeals the judgment of the district court for Douglas County that Conservative was responsible for payment of accrued taxes on the real estate subject to foreclosure and that Conservative was not entitled to interest and rentals from the date the

foreclosure sale was confirmed through the date when the successful bidder paid the balance of his bid.

Conservative filed suit in September 1981 to foreclose a deed of trust given as security for a loan to Harold H. Karp, namely, two parcels which are leased commercial properties. On October 29, 1981, the district court entered an order allowing Conservative to take possession of the security real estate and to collect rents produced from the property.

On September 24, 1982, the district court entered a decree of foreclosure. In that decree the district court determined the amount due Conservative on the Karp note, $246,798.62, less the rent collected by Conservative from November 1, 1981, $22,275, and fixed interest at the rate of 19 percent per annum from the date of the foreclosure decree. The foreclosure decree specifically provided that the rents collected by Conservative

> shall apply in reduction of the amounts otherwise due [Conservative] under this Decree. From date hereof until the date of confirmation of any sheriff's sale held pursuant to this decree, [Conservative] shall be entitled to continue to receive all rents from such premises and, upon notice to all parties and hearing thereon at confirmation, such rentals sums received by [Conservative] subsequent to the date of this Decree shall be applied in further reduction of the amounts due it under its said lien.

The sheriff conducted the foreclosure sale on November 23, 1982. Hanson was the successful bidder at $229,600, and Hanson paid 10 percent of his bid at the sheriff's sale.

On December 7 the district court confirmed the foreclosure sale, but Conservative never requested to have the rentals collected after the foreclosure decree of September 24 applied to its judgment.

While in possession of the premises under the order of possession, Conservative paid the first half city and county real estate taxes. When Hanson purchased the properties at the sheriff's sale, the second half taxes for the county and city were unpaid and delinquent.

On December 21 Hanson paid the unpaid real estate taxes of $2,765.08 on the properties, paid the balance of his bid at the foreclosure sale, took possession of the real estate, and

demanded that Conservative pay $3,300, which was the amount of rent collected by Conservative for December 1982 and the prepaid rent collected for January 1983. In response, Conservative tendered Hanson $1,627.70, that is, the amount of the rents less interest which had accrued for 14 days at the rate of $119.45 per day from the date of confirmation (December 7) until Hanson paid the balance of his bid (December 21). Hanson refused Conservative's tender. On January 3, 1983, Hanson intervened in the foreclosure proceedings and sought to collect the real estate taxes he had paid and to recover the rentals collected by Conservative.

The trial court noted that, because the order of October 29, 1981, authorizing Conservative to take possession of the premises and to collect the rents did not specify how Conservative was to apply the rentals collected, Conservative was in effect a mortgagee in possession of the premises as a receiver appointed by the court. Such status of Conservative continued after the foreclosure decree on September 24, 1982. The district court further noted that, although no receiver's duties were specified in the court's order, Conservative had a contractual duty imposed by the deed of trust.

The deed of trust contained the following provisions:

> 3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first to the payment of interest payable on the Note and on Future Advances, if any, then to the payment of the principal of the Note and to the principal of Future Advances, if any, and then to the payment of amounts payable to Lender by Borrower under paragraph 2 hereof. [Paragraph 2 provided for an escrow fund to pay taxes, insurance premiums, and assessments.]
>
> . . . .
>
> 18. Assignment of Rents; Appointment of Receiver; Lender in Possession. As additional security hereunder, Borrower hereby assigns to Lender the rents and income of the Property, provided that Borrower shall, prior to acceleration under paragraph 16 hereof or abandonment of the Property, have the right to collect and retain such

rents and income as they become due and payable.

Upon acceleration under paragraph 16 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take immediate possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

The trial court found that the "costs of management," as specifically applied to a court-appointed receiver in accordance with paragraph 18 of the deed of trust, imposes on the receiver a duty to apply rentals collected to pay real estate taxes that are due and owing. The district court held that Hanson, because he had discharged Conservative's duty to pay real estate taxes, was entitled to recover from Conservative the amount of taxes paid. The district court further found Conservative was entitled to interest on its debt to the date of confirmation (December 7, 1982), but Conservative was not entitled to rents from the premises after November 23, 1982, the date of the sheriff's sale. The district court then entered judgment in favor of Hanson in the amount of $2,765.08 for back taxes paid on the real estate, and $3,772.50 which was the amount of rents received by Conservative after the date of the sheriff's sale (November 23, 1982).

Conservative's first assignment of error is that the district court erroneously entered judgment for Hanson regarding the real estate taxes paid by him. Conservative contends that paragraph 3 of the deed of trust governs the priority of application of payments received by Conservative, that is, all payments received by Conservative must first be applied to the payment of interest and then to the payment of principal, and lastly to the payment of real estate taxes.

However, paragraph 3 of the deed of trust relates only to

payments made by the borrower pursuant to the borrower's promissory note, and does not apply to a mortgagee in possession of the premises on default of the borrower.

When the lender is placed in possession of the premises on default of the debtor, the provisions of paragraph 18 of the deed of trust govern the priority and application of rent received .from the premises. The deed of trust is unambiguous. Because paragraph 18 of the deed of trust governs disposition of rent collected, the issue is whether payment of real estate taxes is a "cost of management" as the phrase is found and used in paragraph 18. Conservative contends the payment of taxes is not a cost of managing the real estate, because such expense is not specifically itemized in the express terms of paragraph 18. However, the clause "including, but not limited to," indicates that the costs or expenses mentioned are illustrative only. Payment of taxes is, therefore, not specifically excluded by the language of paragraph 18. We hold that the phrase "costs of management," as used in the deed of trust in this case, includes all expenses necessary to perpetuate the actual commercial use of real estate, including the payment of real estate taxes. See, *Real Est.-Ld T. & T. Co. v. B. & L. Assn.,* 124 Pa. Super. 17, 187 A. 824 (1936); *United States v. Thompson,* 272 F. Supp. 774 (E.D. Ark. 1967), *aff'd* 408 F.2d 1075 (8th Cir. 1969); *United States v. Frank,* 587 F.2d 924 (8th Cir. 1978).

Conservative next argues that the trial court erred by awarding Hanson the rents received after the foreclosure sale on November 23, 1982. Conservative contends that Hanson is entitled only to any rents after December 21, 1982, the date when Hanson paid the balance of his bid. Further, Conservative contends that it is error to deny Conservative interest on the unpaid balance of Hanson's bid, namely, interest from the date of confirmation (December 7) to the date Hanson paid the balance of his bid (December 21).

In *McCleneghan v. Powell,* 105 Neb. 306, 312, 180 N.W. 576, 579 (1920), we held:

> Equity will not permit a vendee to enjoy the rentals that are derived from land for which he has not paid and at the same time permit him to escape the payment of interest to the vendor on the unpaid purchase price unless a tender

has been made of such purchase price and kept good. Accord, *Kleeb v. Kleeb*, 213 Neb. 537, 330 N.W.2d 484 (1983); *Jordon v. Jackson, on motion for rehearing* 76 Neb. 15, 107 N.W. 1047 (1906); *Craig v. Greenwood*, 24 Neb. 557, 39 N.W. 599 (1888).

Where a successful bidder at a judicial sale pays only a small deposit or part of his bid at the sale and pays the balance of his bid later but does not pay interest on the balance of his bid, such bidder is not entitled to rents accruing from the date of sale until the balance of the bid is paid. To hold otherwise would bestow an undeserved windfall on the bidder: A bidder could, in good or bad faith, force a mortgagee in possession to finance the balance of the bid without any obligation to pay interest for the use of that money representing the balance of the bid.

We hold that Hanson is entitled to the rents collected for the period from December 21 to December 31, 1982, and to the prepaid rent for January 1983. Hanson, therefore, is entitled to rent in the amount of $718.56 for December 21 to December 31, 1982, and is entitled to the rent for January 1983 in the amount of $1,275. The total rent to which Hanson is entitled is $1,993.56, for which Hanson is entitled to judgment against Conservative. Also, Hanson had paid real estate taxes which we have determined to be the obligation of Conservative. The real estate taxes paid by Hanson are in the amount of $2,765.08. Consequently, Hanson is entitled to judgment against Conservative in the amount of $4,758.64. Because the trial court entered judgment in favor of Hanson against Conservative in the amount of $6,537.58, we affirm but modify the judgment granted to Hanson, namely, we find that Hanson is entitled to judgment against Conservative in the amount of $4,758.64. For this reason the judgment of the district court is affirmed as modified. These proceedings are remanded to the district court with directions to enter judgment in favor of Hanson against Conservative consistent with this opinion.

AFFIRMED AS MODIFIED, AND CAUSE
REMANDED WITH DIRECTIONS.

KRIVOSHA, C.J., concurs in the result.