FRANKLIN NATIONAL BANK v. ROBERTS BROTHERS COMPANY.

(Filed 24 March, 1915.)

1. Bills and Notes—Blank Spaces—Interest—Legal Rate—Presumption.
   Where no stipulated rate of interest is named in a promissory note, the legal rate will apply, and where the note reads "at____per cent per annum" it will be regarded as reading at 6 per cent per annum, the law thus filling, at the legal rate, the space left blank, and the negotiability of the instrument is not affected thereby.

2. Bills and Notes—Exchange of Notes—Consideration.
   In the exchange by two parties of their promissory notes, the giving of each note affords a sufficient consideration for the other.

3. Trials—Issues Sufficient—Appeal and Error.
   The refusal of the court to submit the issues tendered by the appellant will not be held as erroneous when the issues passed upon by the jury have afforded the parties opportunity to introduce all pertinent evidence to the matter in controversy arising under the pleadings.

**4. Bills and Notes—Banks and Banking—Holder in Due Course—Deposits—Trials—Instructions—Verdict, Directing.**

   Where all the evidence in an action brought on a note by a bank claiming to be a holder in due course of an instrument regular upon its face tends only to show that the note was indorsed to the bank by the payee, the money placed to his credit and drawn out by him before maturity; that there was no arrangement between the depositor and the bank by which this or other unpaid notes were charged back to him in event of nonpayment, it is proper for the trial judge to charge the jury that if they should find the facts to be as testified they should answer the issue in the plaintiff's favor.

APPEAL by defendant from *Whedbee, J.,* at October Term, 1914, of WAKE.

Civil action tried on these issues:

1. What amount is the plaintiff entitled to recover on the first note sued on? Answer: "$2,500, with interest at 6 per cent from 16 November, 1912."

2. What amount is the plaintiff entitled to recover on the second note sued on? Answer: "$1,000, with interest at 6 per cent from 23 November, 1912."

From the judgment rendered, the defendant appealed.

*John W. Hinsdale for plaintiff.*
*J. C. Little, Winston & Biggs for defendant.*

BROWN, J. This action is brought to recover on two promissory notes:

$2,500.                                    WENDELL, N. C., Aug. 15, 1912.

November 16, 1912, after date we promise to pay to the order of Harding-Finley Lumber Company, twenty-five hundred dollars at the Bank of Wendell, N. C. Value received, with interest at ___ per cent per annum.                    (Signed)    ROBERT BROS., INC.,
                                            J. L. ROBERTS, *Prest.*

Indorsed:

HARDING-FINLEY LUMBER Co.,
*By* W. H. HARDING, *Prest.*

The other is similar in form to the above, except it is in the sum of $1,000, and is due 25 November, 1912.

It is admitted that these notes were given in exchange for two other notes of similar amounts, executed by the Harding-Finley Lumber Company to the defendant. The defendant discounted the notes received from the said lumber company, and as they were not paid at maturity, the defendant paid the banks at which those notes were discounted, and refused to pay the notes sued on. This is set up as a defense against the recovery by the plaintiff upon the notes executed by the defendant to the said lumber company.

The plaintiff alleges that the notes sued on were indorsed by the Harding-Finley Lumber Company to the plaintiff before the maturity for value, and without notice of any infirmity.

(1) It is contended that the notes sued on are nonnegotiable because there is a blank space for the rate of interest, which is not filled in. It seems to have been decided in a great many cases that stipulating for interest without the rate, *i. e.,* leaving blank the rate of interest, does not affect the negotiability of a promissory note by rendering uncertain the amount, because a blank for interest cannot be filled above the legal rate, and *in the absence of a stipulated rate, the legal rate applies.* *Hoopes v. Collingswood,* 10 Col., 107; *Patton v. Shanklin,* 14 Mon. (Ky.), 15; *Holmes v. Trumper,* 22 Mich., 472.

The legal effect of not filling in the blank is the same as if there had been nothing written or printed after the word "interest," and the reading of the note would be to pay "interest until paid." This causes the debt to draw the rate of interest fixed by law where no rate is expressed. *Hornstein v. Cifuno,* 125 N. W., 136; *Salazar v. Taylor,* 33 Pac., 369; *Jewett v. McGillicudy,* 55 Neb., 588; Ogden Neg. Instr., 42; Second Daniel Neg. Instr. (5 Ed.), 1385, 1458; Parley Law of Interest, 8.

(2) The defendant excepted to the issues and tendered others. These issues offered opportunity to the parties to introduce all pertinent evidence to the matter in controversy as set out in the pleadings, and that is said to be the proper test. *Black v. Black,* 110 N. C., 398; *Pretzfelder v. Ins. Co.,* 123 N. C., 164.

(3) It is contended that there is no consideration for the notes sued on, and that the plaintiff is not a holder in due course, and is, therefore, affected with notice of such infirmity. It is well settled that one promissory note is a good consideration for another promissory note given in exchange. *Higginson v. Gray,* 47 Mass., 212; *Savage v. Ball,* 17 N. J. Eq., 142.

In *Williams v. Banks,* 11 Md., 198, it is said: "A mutual exchange of notes will furnish a good consideration for both, if such affirmatively appears to have been the intention of the parties, and that will depend on the particular circumstances of each case."

(4) His Honor charged the jury: "If you believe the evidence, you will answer the first issue '$2,500, with interest at 6 per cent from 16 November, 1912,' and the second issue, '$1,000, with interest at 6 per cent from 23 November, 1912.' "

To this charge the defendant excepted.

We think the evidence in this case fully warranted the instructions given. We do not gainsay the general proposition that a negotiable instrument, deposited in a bank, indorsed for collection, remains the property of the depositor, nor that the fact that a bank has given a depositor

credit for the amount of a negotiable instrument, regularly indorsed, is not conclusive evidence that the bank had purchased the paper. The evidence in this case does not bring it within the principles laid down in *Packing Co. v. Davis,* 118 N. C., 548; *Bank v. Exum,* 163 N. C., 201; *Latham v. Spragins,* 162 N. C., 405.

The case comes within the principle laid down in *Trust Co. v. Bank,* 166 N. C., 113, where it appeared that the plaintiff bank had an arrangement with its depositor that it would receive for deposit, and as cash items, checks payable to himself, and permit him to draw against them, and that the depositor had drawn out the full amount of the check in question, in which case it was held that the bank was the owner of the check so deposited and entitled to maintain the action thereon.

The uncontradicted evidence in this case shows that the plaintiff is in the possession of the notes sued on and that their execution is admitted in the pleadings. The testimony shows that the notes were indorsed by the payee and discounted to the bank for value and without notice of any infirmity before maturity.

The witness Harding, the president of the defendant company, testifies that he discounted the notes to the plaintiff before maturity, and that the money was placed to the credit of the defendant and drawn out by it, and that the bank became the absolute owner.

The uncontradicted evidence proves that in the course of dealing with the Harding-Finley Lumber Company the plaintiff bank discounted notes, but they were never charged back when not paid, but were taken up by the Harding-Finley Lumber Company by its check.

The uncontradicted testimony of the witness Gehmann proves that the notes were actually discounted and paid for, that the money was drawn out by the Harding-Finley Lumber Company before the notes matured; the full statement of account between the bank and the Harding-Finley Lumber Company, which is made a part of the record, shows no item therein of the charging back of these notes by the bank.

This statement shows that the credit balance at the time these notes fell due of the Harding-Finley Lumber Company was reduced to $34.54 and remained so until 9 December, 1912, when it was reduced to $2.62, and on 11 December it was reduced to 56 cents, and remained at that figure until 23 December, when the Harding-Finley Lumber Company went into the hands of the receiver.

The testimony of Gehmann further negatives completely the proposition that the proceeds of these notes were credited to the account of the Harding-Finley Lumber Company and never drawn out by it. On the contrary, it shows that on 20 August, the day when the $2,500 note was discounted, the Harding-Finley Lumber Company drew out the full amount; and on 23 September, when the $1,000 note was discounted, the said company drew the full amount of the discount.

A perusal of the entire evidence shows, if it is to be believed, that in any view of it the plaintiff bank discounted the notes sued on for value, and became the absolute owner of them, without any notice of any infirmity attached thereto.

No error.