FRANK McGILL, INC., APPELLEE AND CROSS-APPELLANT, v. NUCOR CORPORATION, APPELLANT AND CROSS-APPELLEE.
238 N. W. 2d 894

Filed February 19, 1976. No. 40198.

Peter E. Marchetti of Nelson, Harding, Marchetti, Leonard & Tate, for appellant.

Stephen T. McGill of McGill, Koley & Parsonage, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

This action involves the construction and interpretation of a written contract. The essential question presented is whether the trial court erred in holding the contract sufficiently ambiguous to permit the introduction of evidence of negotiations, conversations, and correspondence preceding the contract. The jury found for the plaintiff, Frank McGill, Inc., and the defendant, Nucor Corporation, appeals. Plaintiff cross-appeals from the refusal of the trial court to allow prejudgment interest. We affirm.

In the spring of 1973, Nucor built a steel plant rolling mill near Norfolk, Nebraska. The building is L-shaped. The east-west building forms the long side of the L, and the north-south building forms its short side. The walls and ceilings are constructed of a roll-form metal material not unlike corrugated steel siding. This siding is attached to vertical support studs or purlins, and horizontal trusses placed at regular intervals. The studs and trusses protrude from the siding surface into the building some 6 inches. To understand the question involved, we include the following photograph. It is a copy of a photograph of a portion of the wall in the east-west building.

While the plant was under construction, McGill's officers became aware of Nucor's plans to insulate the interior of the building with a foam product. Frank McGill, McGill's president, and Jim Anderson, its estimator, went to the plant to see Nucor's construction manager. They were given a set of blueprints and began figuring the areas involved. They toured the plant and observed the walls, ceilings, trusses, and studs. According to Frank McGill's testimony, they were told by the construction manager that only the "east-west" building was to be insulated. Jim Anderson testified that the area he "took off" the plans was that area the walls would comprise if they were a smooth box shape. This area, according to his testimony, was 260,000 square feet.

On March 13, 1973, Anderson submitted a bid of $93,800 for the work, figuring the area to be covered, including the truss and stud surfaces, was approximately 320,000 square feet. He arrived at this figure by multiplying 260,000 by a "factor" of 1.2, to account for the surface irregularities. The propriety of this "factoring" was documented by an estimating guide prepared and published by the Painting and Decorating Contractors of America, which was admitted into evidence.

After subsequent negotiations, McGill's bid price was reduced to $69,000. This reduction took into account some changes in the nature of the work to be done, which included the elimination of a bonding agent for the walls and a reduction from 1 inch to 3/4 of an inch thickness of the insulation to be used. This second bid was submitted on March 29, 1973. It stated in part: "The area included shall be all the metal siding and ceilings of *the east-west building* that parallels the road from the far west end to the east and that attaches to the north-south running building. All structural steel that is directly attached to the metal siding shall be insulated also. This insulation shall be applied to a point approximately six inches away from the metal

siding. This area is approximately 320,000 square feet of metal wall and ceiling *surfaces."* (Emphasis added.)

A few days after McGill's $69,000 bid was submitted, a Nucor employee prepared the contract involved in this lawsuit. The pertinent sections of that contract are the first two paragraphs and numbered paragraph 6. They are as follows: "This agreement, entered into this 4th day of April, 1973, by and between Nucor Corporation (hereinafter referred to as Nucor) and Frank McGill, Incorporated (hereinafter referred to as Contractor). "WITNESSES:

"That the parties hereto agree that the Contractor shall carry out work generally described as furnishing and applying Polyurethane Foam Insulation for Nucor's steel mill buildings located on property owned by Nucor's and located in Stanton County Nebraska in consideration of the sum of sixty nine thousand dollars and no cents ($69,000.00) to be paid to him by Nucor upon completion of all items of work as described hereunder. (Emphasis added.)

"6) Contractor agrees that the work to be done covers approximately three hundred and twenty thousand square feet and includes all structural metal directly attached to the metal siding and siding. Any additional coverage called for by Nucor Manager of Construction shall be done on the same unit cost basis as the original work. Any less coverage than that called for in this contract (320,000 square feet) will be rebated by the Contractor or on the same basis. The Contractor agrees that this cost is twenty-one and one half cents ($0.215) per square foot."

McGill entered into the performance of the contract and continued until its workmen caught up with the general contractor's finished work. At that time, work was discontinued until such time as the general contractor completed the east-west building. At this time it became evident the parties had different interpretations of the contract. McGill contended the 320,000 square

feet involved was the actual surface area of the east-west building, as set out in its bid. This Nucor disputed.

Nucor contended the square foot calculation was on a dimensional area or the area embraced if the surface was entirely smooth, taking no account of the purlins, trusses, corrugations, or other irregularities. This, according to Nucor, would give a figure of 245,505 square feet for the east-west building. It contended the remainder of the work was to be done in the north-south building, which it figured had a dimensional area of 84,864 square feet. Nucor's evidence was the dimensional area of both buildings totalled 330,985 square feet. McGill, as noted, contended the area embraced was only the east-west building surface, considering all the irregularities involved as well as the trusses and purlins that were to be covered. The fact that the word "buildings" was used in the opening portion of the contract set out heretofore, and these diverse contentions, made an issue of the meaning of "square feet," as used in the contract.

Shortly subsequent to the work stoppage, Nucor learned that the foam it had specified for the contract created a potential fire hazard and officially terminated the contract. At that time, McGill calculated that 86 percent of what it considered the job to be done had been completed. This calculation was based upon a percentage of that portion of 320,000 square feet of the surface area it had covered. Nucor did not contest the 86 percent completion of the east-west building. It contended that the square footage of the east-west building on its dimensional area calculation was only 245,505 square feet, and applied the 86 percent completion to that figure. The dollar amount involved in the different interpretations of the parties was $13,839.55.

We agree with defendant, where negotiations between parties result in an agreement and that agreement is reduced to writing, executed, and delivered, the writing, in the absence of fraud, mistake, or ambiguity, is the

only competent evidence of the contract. Bitler v. Terri Lee, Inc. (1957), 163 Neb. 833, 81 N. W. 2d 318.

Conversely, where a contract is ambiguous, the court must determine the intent of the parties and the ambiguity must be resolved so as to give effect to that intent. Knight Bros., Inc. v. State (1972), 189 Neb. 64, 199 N. W. 2d 720. In Knight, we also held a provision of a contract is ambiguous when, considered with other pertinent provisions as a whole, it is capable of being understood in more senses than one.

The contract herein was drafted by a nonlawyer, an employee of the defendant, possibly in response to the bid submitted by the plaintiff. We say possibly because the inference from Nucor's argument is that the contract was strictly a counteroffer. A skilled draftsman would have been more specific. It seems obvious that the ordinary painting contractor, in submitting a bid on irregular surfaces, on a square foot basis, would expect the bid to apply to the surface as it existed and not to a smooth surface. McGill offered expert testimony that in the painting and spray-on insulation trade, square feet refers to square feet of surface area and it is the custom and practice to apply factors in computing surface areas. This evidence was undisputed.

The contract calls for a certain amount of work to be done in clear, concise terminology. The problem is not whether square feet means dimensional area or total surface area, but rather how much of Nucor's plant is contemplated by the phrase "320,000 square feet." Nowhere in the contract is the area to be covered specifically described. The use of the word "buildings" rather than "building" is the basis for Nucor's claim. In its answer to one of plaintiff's interrogatories it said: "The projected approximately 320,000 square feet was contained in the areas in defendant's buildings identified as the roll mill, the roll shop and the billet storage area." These descriptions are not found in the contract, nor are they mentioned in the bid proposals. The only

reference to area in the contract is the one made in paragraph 6 that the contractor agrees that the work to be done covers approximately 320,000 square feet, and includes all structural metal directly attached to the metal siding. Consequently, other evidence is necessary to determine the area embraced by the 320,000 square feet covered by the contract.

In order to discover the intent of the parties and to define the scope of the work to be rendered in return for the $69,000 specified in the contract, the trial court permitted the jury to view the bid letters and to hear evidence of the negotiations. The bid letters by specifically referring to the east-west building, quite clearly indicated the intent of McGill in its bid. The March 29, 1973, bid submitted by McGill embraced the language set out heretofore. It specifically states the area included and states this area is approximately 320,000 square feet of metal wall and ceiling surfaces. It would seem to us this bid, together with some of the previous dealings of the parties, was sufficient to put Nucor on notice that the McGill bid contemplated work only in the east-west building, and was phrased exclusively in terms of surface areas.

We conclude that the trial court was correct in permitting the introduction of evidence of negotiations, conversations, and correspondence to explain the area embraced by the language "320,000 square feet."

The remaining question presented is plaintiff's cross-appeal for prejudgment interest. The generally accepted rule is that, in the absence of agreement to the contrary, liquidated demands bear interest whereas unliquidated demands do not. Mid States Engineering v. Rohde (1968), 182 Neb. 590, 156 N. W. 2d 149. Where a reasonable controversy exists as to the plaintiff's right to recover and the amount of such recovery, a claim is generally considered to be unliquidated and prejudgment interest is not allowed. See K & R, Inc. v.

Crete Storage Corp. (1975), 194 Neb. 138, 231 N. W. 2d 110.

In Abbott v. Abbott (1972), 188 Neb. 61, 195 N. W. 2d 204, we held: "Where the amount of a claim is liquidated, compensation in the form of prejudgment interest is allowed as a matter of right." In that case we also held: "A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount, without reliance upon opinion or discretion."

Plaintiff recovered the exact amount of its bill, and the evidence furnished data from which that amount was readily computable without reliance on opinion or discretion. If it were not for the use of the word "buildings" in the contract we would have no hesitancy in allowing prejudgment interest. While the evidence was otherwise, that word gave substance to the defendant's claim, whether the use of the word was deliberate or inadvertent. The contract was ambiguous and subject to construction to resolve the ambiguity. On this record, we sustain the trial judge's determination that prejudgment interest should not be allowed.

The judgment is affirmed.

AFFIRMED.