IRENE LOVELACE AND CLIFFORD LOVELACE, WIFE AND HUSBAND, APPELLEES, V. RAYMOND T. STERN, APPELLANT.

297 N.W.2d 160

Filed October 3, 1980. No. 42800.

R. Steven Geshell of Robak and Geshell for appellant.

Steven M. Curry of Sampson, Curry & Hummel for appellees.

Heard before BOSLAUGH, BRODKEY, and HASTINGS, JJ., and BUCKLEY and WINDRUM, District Judges.

BUCKLEY, District Judge.

This action arises from a 1966 contract for the sale of certain real estate in Merrick County, Nebraska, by Irene Lovelace and her husband, Clifford Lovelace, to Irene's nephew, Raymond T. Stern. The written contract provided for a total purchase price of $48,000 payable by annual payments of $4,000 until paid.

Stern made 12 annual $4,000 payments and contended that he had paid the purchase price in full. He refused to make further payments. The Lovelaces contended that interest accrued on the unpaid balance of the purchase price and that, therefore, the purchase price was not fully paid, and proceeded to bring this action to regain possession and title to the property or, in the alternative, for a judgment for the unpaid balance of the purchase price. Defendant Stern counterclaimed for title to be quieted in his name.

The sole question presented is whether the written contract required interest to be paid on the unpaid balance of the purchase price. The trial court found for the plaintiffs, entered judgment for the amount of the unpaid purchase price, namely, $27,833.71, and dismissed defendant's counterclaim.

The agreement in question was executed on January

4, 1966. However, the same parties only months before, namely on September 14, 1965, had executed an agreement for the sale of the same property, utilizing a preprinted form entitled "Agreement for Warranty Deed." This agreement did not specify a total purchase price but provided that "The second parties [Stern] shall pay to the first parties [Lovelace], the sum of $4,000.00 per year during the life of Irene Johnson Lovelace. Second parties will pay the sum of $2,000.00 January 1, 1966 and $2,000.00 July 1, 1966 and $4,000.00 on January 1, 1967 and each January 1st thereafter during the lifetime of the said Irene Johnson Lovelace."

The new agreement, the one in question, utilized the same preprinted form as the earlier one. After the usual recitation as to the parties and a typed-in description of the premises being sold, the agreement then recited (typing indicated by italics): "And the said party of the second part covenants and agrees to pay to said party of the first part, the sum of *Forty Eight Thousand Dollars ($48,000.00)* DOLLARS in the manner following: *Two Thousand Dollars (2,000.00* Dollars, cash in hand paid, the receipt whereof is hereby acknowledged, and the balance *$2,000.00 July 1, 1966, $4,000.00, January 1, 1967 and each January 1st thereafter until paid.*" Then, continuing in the large blank space provided for payment provisions, there is typed: "*First parties agree to pay the first half of the 1965 real estate taxes and second party shall pay the second half and all future real estate taxes.*"

Following this provision, and considerably below it, the preprinted form resumed as follows: "with interest at the rate of _____ per cent per annum, payable _____ annually on 'the whole sum remaining from time to time unpaid, and to pay all taxes, assessments or impositions that may be legally levied or imposed upon said land, subsequent to the year _____."

The agreement provided that, when the purchase price was paid, the plaintiffs would convey the property by warranty deed to the defendant. However, for

reasons unknown, such a warranty deed was executed, delivered, and recorded on January 4, 1966, simultaneously with the execution of the agreement to sell. The deed did not mention the agreement to sell and recited a consideration of $48,000, "in hand paid."

The interest clause in the contract did not provide for any specific rate of interest to be paid. It is true, as plaintiffs contend, that as a general rule, a written instrument which provides for payment of interest on an unpaid balance, but without specifying the rate, carries interest at the legal rate prescribed by law. See, *Hornstein v. Cifuno*, 86 Neb. 103, 125 N.W. 136 (1910); *Praest v. Quesner*, 113 Neb. 485, 203 N.W. 549 (1925); *Bank v. Roberts*, 168 N.C. 473, 84 S.E. 706 (1915). In each of these cases, it was clear from the terms of the instrument that interest was to be paid but the specific rate of interest was omitted. However, where the terms of the agreement do not clearly indicate that interest is to be paid, then parol evidence may be considered to first determine, as a finding of fact, whether the parties intended that interest be paid, before the general rule would apply.

A written instrument is open to explanation by parol evidence when its terms are susceptible to two constructions, or where the language employed is vague or ambiguous. *Olds v. Jamison*, 195 Neb. 388, 238 N.W.2d 459 (1976). A provision of a contract is ambiguous when, considered with other pertinent provisions as a whole, it is capable of being understood in more senses than one. *Frank McGill, Inc. v. Nucor Corp.*, 195 Neb. 448, 238 N.W.2d 894 (1976).

Examining the agreement in question, we see that the preprinted form that was used obviously was designed to provide a blank space for the insertion of the payment provisions for the balance of the total purchase price, to be followed immediately thereafter with a designated rate of interest. The blank space was not designed to include the provisions for the payment of taxes inserted by the parties inasmuch as there is

already a preprinted provision for the payment of taxes by the purchaser. The inserted tax provision is in conflict with the preprinted tax provision, and its position in the agreement, namely, between the payment provisions and the preprinted interest clause, makes it unclear whether the interest clause would pertain to the unpaid balance of the purchase price, or any unpaid taxes, or both. We, therefore, conclude that the provisions involved and their relative positions in the agreement are vague, and as such, are capable of being understood in more senses than one and are susceptible to more than one construction. The contract is ambiguous and parol evidence was properly admitted by the trial court and should be considered by this court.

This action was instituted as an equity action and prayed for equitable relief, as did also the counterclaim. "Actions in equity, on appeal to this court, are triable de novo in conformity with section 25-1925, R. S. 1943, subject, however, to the condition that when the evidence on material questions of fact is in irreconcilable conflict this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite." *Sopcich v. Tangeman*, 153 Neb. 506, 510-11, 45 N.W.2d 478, 481-82 (1951). See, also, *Tilden v. Beckmann*, 203 Neb. 293, 278 N.W.2d 581 (1979). Giving such deference to the trial court, nonetheless, after considering all the evidence, we are convinced that the parties did not intend that any interest be paid on the unpaid balance of the purchase price, and, accordingly, we must reverse.

The attorney handling the two agreements had no independent recollection of anything whatsoever. Clifford Lovelace testified that no discussion was had regarding interest when the agreement in question was executed. Irene Lovelace could recall nothing regarding interest. The defendant testified that when the agreement in question was signed, Irene stated that no interest was to be charged on the sale.

The earlier agreement between the parties becomes very significant. There the agreement simply provided that the defendant would pay to Irene, his aunt, $4,000 per year during her life. The same preprinted form was utilized and the same payment of tax provision was inserted, followed again by the preprinted interest clause with no interest inserted. It is obvious that such a payment provision would not draw interest inasmuch as there could be no unpaid balance upon which interest could accrue (unless the required payments became delinquent, a matter the parties would be presumed not to contemplate).

The second agreement is identical to the first, except that the total purchase price became fixed at $48,000. The parties and their lawyer could not recall why the second agreement was substituted for the first except that there is evidence that it was done for tax purposes. The determination of $48,000 as the fixed amount is not difficult to understand when one considers that at the time of the first agreement, Irene Lovelace had a mortality table life expectancy of 12 years, making the total annual payments based on such expectancy $48,000. There was no evidence whatsoever that would suggest that, between the execution of the first and second agreements, the parties decided to impose interest on the unpaid balance.

The defendant's testimony that his aunt stated that no interest was to be paid is indirectly corroborated by her testimony. At the time of trial, she was 77 years old and her testimony clearly shows that she not only had no understanding of why the second agreement was substituted for the first, but had little understanding of why the litigation and trial ensued. She was very fond of her nephew, even at time of trial, wanted him to have the land, and only understood that she was to be paid $4,000 per year so she would have something to live on.

The court may also look on the interpretation placed on the contract during the period of performance. *Knight Bros., Inc. v. State*, 189 Neb. 64, 199 N.W.2d

720 (1972). Defendant made the required annual payments promptly. There is no evidence that, at any time following the execution of the agreement in question, the matter of interest was ever discussed between the parties or otherwise. Defendant made his 12th and last payment on January 2, 1977. The following year, in January 1978, Irene's husband inquired about the missing payment and was advised by defendant that he had completed his required payments on the contract. No claim that there was any balance due because of interest accrued was made at that time, but shortly thereafter defendant received a letter from an attorney plaintiffs had contacted, stating that the contract required interest at 6 percent per annum on the unpaid balance and enclosing a payment schedule which he prepared showing the amount allocated to principal and interest on the payments made and showing a balance due of $26,000. This was the first indication of any claimed payment schedule or any indication of a declining unpaid balance for allocation of principal and interest on the $4,000 annual payments. It is a reasonable conclusion that the plaintiff and her husband were always under the misunderstanding that plaintiff would receive, in effect, a lifetime annuity of $4,000 per year, whether she died a year after the execution of the agreement or 30 years later.

The warranty deed delivered at the time of the agreement to sell, rather than after the total purchase price was paid, acknowledged a total consideration of $48,000, "in hand paid." While that was not the fact then, it suggests the total sum plaintiffs were to receive.

In addition, the fact that in this case the preprinted interest clause is totally out of any grammatical context with the payment provisions, with the space for insertion of the rate of interest left blank, is evidence that the interest clause was not intended to be operative, any more than the preprinted payment of taxes clause immediately thereafter was intended to be operative.

We, therefore, conclude that the parties intended that the defendant pay his aunt a total of $48,000 in

12 annual $4,000 payments, the equivalent of the lifetime annuity provided for in the first agreement, and that, therefore, no interest was to accrue on any unpaid balance. The judgment is reversed with directions to dismiss plaintiffs' petition and to enter judgment for the defendant on his counterclaim.

REVERSED AND REMANDED WITH DIRECTIONS.

WINDRUM, District Judge, concurring.

I concur in the opinion of the Honorable Judge Buckley and adopt his reasoning as expressed therein, with additional comments, except where in conflict herewith.

I have no quarrel with the general principle of law that where interest is provided for but the rate is not mentioned, the legal rate is to be paid. I do believe, however, that where interest is provided for but the rate thereof is "_____," there is a patent ambiguity.

In 1910, in the case entitled *Hornstein v. Cifuno*, 86 Neb. 103, 125 N.W. 136 (1910), the court was called upon to determine whether or not the legal rate of interest was due and payable from the maker of the following note, to wit: "$400. Omaha, Neb., Jan. 4, 1907. One year after date we promise to pay to the order of Liberato Varriano four hundred and no-100 dollars at Omaha, Nebraska. Value received with interest at the rate of _____ per cent. per annum from _____ until paid. . . ." *Id.* at 104, 125 N.W. at 136.

Chief Justice Reese, in writing the opinion, stated that the legal effect of such a note was the same as if there had been a period after the word "interest" and all the rest of the note would be disregarded. Many cases cite this case with approval. I submit that the court changed the agreement of the parties by placing a period after the word "interest" as the note still said "Value received with interest at the rate of _____ per cent. per annum from _____ until paid," no matter what the court said it said. That is entirely different than stating "Value received with interest." The ambiguity lies in that the parties could have intended that the note draw interest at the legal rate or that the

parties could have intended that the note draw interest at the rate of ____ percent, which, in effect, would be no interest.

From the *Hornstein v. Cifuno* case it was an easy step to announce as a principle of law "A promissory note which, by its terms, provides for interest from date, without any specified rate, bears interest at the rate of 7 per cent. per annum from its date." Such was syllabus point no. 2 in *Praest v. Quesner*, 113 Neb. 485, 203 N.W. 549 (1925).

The notes there construed provided for interest at the printed rate of 10 percent. However, the word "ten," indicating the rate of interest, was stricken and nothing was inserted in lieu thereof.

Obviously, the legal rate of interest in 1925, at the time that case was decided, was 7 percent. Suppose that the printed rate in the note had been 7 percent: would the holding have been the same? I do not believe so, as it would have resulted in the anomalous situation of determining that, while the rate of interest was stricken by the parties, the parties intended the note to draw interest at the same rate, notwithstanding that the rate of interest was so stricken by the parties. Such reasoning would be ludicrous. However, the case cited as authority was *Hornstein v. Cifuno, supra.*

I realize that the two cases involved different situations. However, *Praest v. Quesner* is analyzed to point out the fallacious reasoning thereof, which is an extension of the fallacious reasoning in the case of *Hornstein v. Cifuno.*

It is the experience of the writer of this opinion that these problems are generally generated when printed notes are utilized between close members of the family and, oftentimes, there is no interest whatsoever intended. It would seem to the writer of this concurring opinion that it would be a better rule of law that, where a note provides for interest at the rate of "____ percent," it shall be construed as patently ambiguous and parol evidence would be admissible

to determine the intent of the parties. Anyone signing such a note or receiving such a note could expect that a lawsuit would ensue. Both the payee and the maker would be inconvenienced by their carelessness. Under the present rule of law in Nebraska, the payee of the note always recovers interest at the legal rate, regardless of the actual intent of the parties, and the maker has no recourse whatsoever. Such a rule is patently unfair. Why should the law favor one over the other? To do so completely ignores the common experience of mankind.

The legal principles announced in *Hornstein v. Cifuno, supra,* and *Praest v. Quesner, supra,* were erroneous when pronounced and should be overruled. The principles therein announced do not become more valid with age.

BRODKEY, J., dissenting.

I must respectfully dissent from the opinion of the majority of the division in this court. Not only do I feel that it has applied incorrect legal principles concerning Nebraska statutory provisions, but I feel the result is highly inequitable.

I start my discussion with a consideration of the scope of review by this court applicable to this case. This action was initiated as an equity action and prayed for equitable relief, as does also the counterclaim. The rule is well established that: "Actions in equity, on appeal to this court, are triable de novo in conformity with section 25-1925, R. S. 1943, subject, however, to the condition that when the evidence on material questions of fact is in irreconcilable conflict this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite." *Sopcich v. Tangeman,* 153 Neb. 506, 510-11, 45 N.W.2d 478, 481-82 (1951). See, also, *Tilden v. Beckmann,* 203 Neb. 293, 278 N.W.2d 581 (1979).

The record evidences that conflicting testimony was adduced with regard to whether interest was payable under the January 4, 1966, contract. The attorney who drafted both of the agreements, and the deed, had no independent recollection of the transaction. Irene Lovelace testified that at the time the second contract was executed she could not remember any discussion regarding interest or payment in regard to the sale of the land. Clifford Lovelace's testimony is conflicting with regard to whether or not he was present at the execution of the second contract, and he offered no testimony with regard to the payment of interest under the terms of the contract. Only the defendant, Raymond Stern, testified that at the signing of the January 4, 1966, contract, Irene Lovelace stated that no interest was to be charged on the sale of the land. Keeping in mind the aforementioned standard of review, we conclude that the evidence is conflicting, and that the conclusion of the trial court, to wit, that the parties intended that interest should be paid, must be given deference by this court.

Under the facts of this case, I believe that Stern is liable as a matter of law for the payment of interest on the unpaid purchase price. Neb. Rev. Stat. § 45-104 (Reissue 1978) provided, in pertinent part: "On money due on any instrument in writing, . . . interest shall be allowed at the rate of six per cent per annum." It is a general rule that contracting parties are presumed to contract in reference to existing law and that all applicable and valid statutes existing at the time a contract is made, become a part of the contract and must be read into it. *McWilliams v. Griffin*, 132 Neb. 753, 273 N.W. 209 (1937).

This court has also had the opportunity to examine and rule upon a situation very similar to that presented in this action. *Hornstein v. Cifuno*, 86 Neb. 103, 125 N.W. 136 (1910), involved an action which was instituted to foreclose a real estate mortgage given as security for a note wherein the rate of interest to be

charged was left blank. The provision in question read as follows: "Value received with interest at the rate of ___ per cent. per annum from _____ until paid." In finding that the note drew interest at the legal rate from the date of the decree, the court stated: "As is shown by the copy of the note above set out, the blanks for the statement of the rate of interest and the date from which the interest would run were not filled in at the time of the execution of the note, and the legal effect would be the same as if there had been nothing written or printed after the word 'interest', and the reading of the note would be to pay 'interest until paid.' This would cause the debt to draw interest at the legal rate of 7 per cent. per annum from the date of the note. [Citations omitted.]" *Id.* at 104, 125 N.W. at 136. See, also, *Praest v. Quesner*, 113 Neb. 485, 203 N.W. 549 (1925); *Traudt v. Nebraska P. P. Dist.*, 197 Neb. 765, 251 N.W. 2d 148 (1977).

In his concurring opinion, Windrum, District Judge, would have us overrule our previously announced law as set forth in the foregoing cases, which has been the law of this state for over 40 years. I see no reason for doing so and would be opposed to his suggestion that we do so in this case. The rule stated in *Hornstein v. Cifuno, supra,* is clearly the general rule in this country, and should be adhered to. See 45 Am. Jur. 2d *Interest and Usury* § 68 (1969).

The majority opinion argues and would have us conclude that it was not intended that interest be paid by the defendant under the contract dated January 4, 1966. In support of this proposition, the majority argues that a tax provision inserted by the parties is in conflict with the preprinted tax provision and that its position in the contract, between the payment provision and the preprinted interest clause, creates ambiguity so as to open the contract to parol evidence on the issue of whether interest is payable under the contract. I find this argument untenable. The rule is well settled that where part of a contract is written or typed and

part is printed, and the typed parts appear to be inconsistent with the preprinted provisions, the typed provisions prevail. *First Nat. Bank v. Greenlee*, 102 Neb. 180, 166 N.W. 559 (1918). The rationale for this rule is that the typed words are the immediate language and terms selected by the parties themselves for the expression of their meaning. This rule, however, is resorted to only from necessity when the typed clauses and the printed clauses cannot be reconciled. When the typed and printed parts may be reconciled by reasonable construction, that construction must be given effect, because it cannot be assumed that the parties intended to insert ineffective provisions. 17 Am. Jur. 2d *Contracts* § 271 (1964). I am of the opinion that the tax provision inserted by the parties in the January 4, 1966, contract is a clear expression of their respective obligations thereunder, and the terms do not create "irreconcilable" conflict so as to make the contract ambiguous as to the payment of interest. I cannot agree with the argument that the location of the tax provision, or the punctuation used, creates ambiguity within the contract terms. While punctuation in a contract may be resorted to in order to solve an ambiguity, punctuation or the absence thereof, cannot of itself create ambiguity. 17 Am. Jur. 2d *Contracts* § 279 (1964).

We must also bear in mind the general rule that: "Absent any stipulation to the contrary, the purchaser has a right to possession or the rents and profits of the land and the vendor a right to *interest on the unpaid purchase price*. The fruits of possession and the interest are mutually exclusive—*there is no right upon the part of either to have both*." *Bembridge v. Miller*, 235 Or. 396, 408, 385 P. 2d 172, 178 (1963) (emphasis supplied). See, also, *McCleneghan v. Powell*, 105 Neb. 306, 180 N.W. 576 (1920). The trial court found from the evidence that the parties intended interest to be included in the contract. I agree, and would find that Stern should be obligated to pay interest at the legal rate of 6 percent on the unpaid balance of the contract.