GARY DARNALL AND EMILIE DARNALL, APPELLANTS AND CROSS-APPELLEES, V. BERNARD PETERSEN, APPELLEE, AND KAY PETERSEN, APPELLEE AND CROSS-APPELLANT.
592 N.W.2d 505

Filed March 16, 1999.   No. A-97-1112.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellants.

John P. Weis, of Sorensen & Zimmerman, P.C., for appellees.

MUES, INBODY, and CARLSON, Judges.

MUES, Judge.

## INTRODUCTION

Gary Darnall and Emilie Darnall sued Bernard Petersen and Kay Petersen to recover on a promissory note. After trial but before judgment, the Darnalls' claim against Bernard was discharged in bankruptcy court. The trial court subsequently entered judgment against Kay for the principal amount but denied interest, finding that the interest rate charged was usurious. The Darnalls timely appeal that order, and Kay cross-appeals.

## BACKGROUND

On February 10, 1995, the Darnalls filed a lawsuit against the Petersens alleging that on January 26, 1989, the Petersens executed a promissory note for $55,000 plus interest. The note was due on demand and provided for 13 percent interest and 18 percent default interest. The Darnalls alleged that they had received only two payments, one payment for principal and interest in the amount of $45,000 and another payment for interest in the amount of $2,500.

The Petersens' answer, filed March 9, 1995, generally denied the allegations and alleged that when they signed the note, the blanks for the interest rate and the default interest rate were not filled in. The Petersens further alleged that the parties had agreed on a variable interest rate, the terms of which were to be filled in at a later date. The Petersens also contended that the default rate of interest was usurious.

The Petersens' attorney subsequently withdrew, and on November 28, 1995, Kay, represented by a new attorney, filed a second answer. Kay alleged that when the note was presented to her, no interest rate was shown on the note and that it was her understanding that no interest would be charged on the note. Kay further alleged that the interest rate on the note was usurious and prayed that the court find that the Darnalls should not be permitted to collect interest and that the amount due and owing on the note was $7,500.

On December 5, 1995, Kay filed a "Motion to File Amended Answer," with the pleading attached as an exhibit. In addition to the allegations set forth above, Kay's amended

answer contained allegations that the note had been *materially altered* without any authority and that no interest or due date was specified on the note she originally signed. While our record does not contain an order sustaining Kay's motion, it is apparent from the proceeding that followed its filing that the district court and parties treated the motion as having been granted.

Trial was held February 26, 1996. Bernard did not appear at trial nor did counsel appear on his behalf. Counsel for the Darnalls read certain "admissions" of Bernard into the record that were deemed to be admitted because of Bernard's failure to respond to requests for admissions. Bernard "admitted," inter alia, that the note he and Kay originally signed specified an interest rate of 13 percent and a default rate of 18 percent.

The promissory note was admitted into evidence. In a space obviously intended for such purpose, the preprinted note form reflects handwritten interest rate figures of 13 percent per annum from date until due and 18 percent from maturity until paid. In another space, the note contains a handwritten due date of "on demand." The two payments that were received from the Petersens are also indicated on the front side of the note. Emilie testified that she had made notations of the payments on the note.

Gary testified that he and Bernard discussed the interest rate prior to execution of the promissory note and that at the time the Petersens signed the note, the blanks for the interest rate, the default interest rate, and the due date contained the terms agreed to by the parties. Gary also testified that it was his understanding that this was a business loan to be used for the purchase of a flower shop that the Petersens were purchasing in Gering, Nebraska.

Bernard made a $2,500 payment toward the loan on March 1, 1990. Bernard made another payment of $45,000 on November 1. In November 1994, the Darnalls made demand for the remainder of the moneys owed. In January 1995, counsel for the Darnalls wrote the Petersens a letter demanding that payment be made and threatening legal action if the note was not paid. Bernard responded with a letter to Gary stating that the interest rate, default rate, and due date were not "filled in, nor agreed

upon at the time of borrowing." Bernard asserted that the parties had agreed upon a "fluctuating CD rate, simple interest, without demand." Bernard asked Gary to recalculate the principal and interest according to their agreement.

Gary testified that he has received no additional payments from the Petersens. According to Gary, as of the date of trial, the principal and interest owing on the note was $34,068.87. Gary arrived at this figure using a 13-percent interest rate.

Albert Lyter III, a forensic chemist, was called to testify on behalf of the Darnalls. Lyter has a bachelor's degree in chemistry and biology and a master's degree in forensic science. Prior to opening his own business in 1981, Lyter worked for the U.S. Treasury Department in the Bureau of Alcohol, Tobacco, and Firearms laboratory.

Lyter conducted both physical examinations and chemical tests on the promissory note. Based upon his physical examinations of the document and the chemical tests performed, Lyter opined that the terms of the document were all written during the "same time period."

During cross-examination, Lyter testified that depending on the ink, "same time period" could be a matter of days. Lyter further acknowledged that if the same pen was used to write the initial terms of the document and then later used to add the additional terms, then, depending on the circumstances, there might be a situation where he could not detect an alteration made 6 months later. However, he reiterated that based upon the fact that the same ink was used and the fact that he found no differences in the relative dryness of the ink, "the simplest conclusion is that they were all done at the same time."

Andrew Bradley, a document examiner, was next called to testify. Bradley worked as a document examiner for the Arapahoe County Sheriff's Department from 1968 through 1993. Bradley has also done work for the Secret Service and the Federal Bureau of Investigation. Bradley examined the handwriting on the promissory note using microscopic equipment.

Based upon a reasonable degree of forensic certainty, Bradley opined that all of the terms of the promissory note were written by the same person at the same time. During cross-examination Bradley admitted that he could not rule out that

some of the terms were written at a different time but stated that based upon his experience and training, he believed that they were written at the same time.

Kay admitted that she signed the promissory note but testified that when she signed it several terms were missing, including the interest rate, the default rate, and the due date. According to Kay, she questioned Bernard as to why the interest rate was left blank and he explained to her that he and Gary were going to work out an interest rate based on CD rates. She stated that she did not authorize Bernard or the Petersens to fill in the interest rate. Prior to receiving the notice from the Darnalls, Kay was unaware that the loan had not been paid.

Counsel for Kay also read several portions of Bernard's deposition into the record. At the time of his deposition, Bernard was living in Colorado. Bernard testified that when he signed the promissory note, the interest terms and due date were not on the document.

The parties rested, and the court took the case under advisement. Several weeks later, prior to the court's decision, Bernard filed a suggestion of bankruptcy and the proceedings were stayed. Following Bernard's discharge in bankruptcy, the Darnalls filed a motion to proceed against Kay on April 4, 1997. The motion was granted, and on October 7, the court rendered its opinion. The court found that the interest rates were inserted after Kay signed the promissory note and that no authority was given to do so, but that "no corrupt or fraudulent intent on [the Darnalls'] part was pleaded or proved and that the alteration was not so egregious as to prevent [the Darnalls] from recovering their principal." The court found that the 18-percent default rate was excessive and that none of the statutory exceptions applied. Accordingly, the court held that the Darnalls were entitled to be paid the remaining principal amount due of $7,500 but were not entitled to interest. The court further ordered the Darnalls to pay the costs of the action. The Darnalls timely appeal, and Kay cross-appeals. For the reasons set forth below, we affirm in part and in part reverse, and remand with directions.

## ASSIGNMENTS OF ERROR

The Darnalls' assignments of error, condensed and restated, are that the trial court erred in not properly considering

Bernard's "admissions," in finding that the interest rates were inserted after execution of the note, in failing to award any interest as part of the judgment, and in assessing costs to the Darnalls.

On cross-appeal, Kay alleges the trial court erred in failing to find that the alteration prevented the Darnalls from recovering the remaining principal due.

## STANDARD OF REVIEW

When a dispute sounds in contract, the action is to be treated as one at law. *Nebraska Pub. Emp. v. City of Omaha*, 247 Neb. 468, 528 N.W.2d 297 (1995).

In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside unless clearly erroneous. *Schuelke v. Wilson*, 255 Neb. 726, 587 N.W.2d 369 (1998).

In reviewing a judgment awarded in a bench trial, the appellate court does not reweigh the evidence but considers the judgment in a light most favorable to the successful party. *Anderson/ Couvillon v. Nebraska Dept. of Soc. Servs.*, 253 Neb. 813, 572 N.W.2d 362 (1998).

## DISCUSSION

*Are Bernard's Admissions Admissible Against Kay?*

Before we address the merits of this case, it is first necessary to determine whether Bernard's "admissions" under Neb. Ct. R. of Discovery 36 (rev. 1996) are admissible against Kay.

Rule 36 in pertinent part provides:

(a) . . . A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters . . . .

Each matter of which an admission is requested shall be separately set forth by the party making the request, and shall be repeated by the responding party in the answer or objection thereto. The matter is admitted unless, within thirty days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter . . . .

. . . .

    (b) . . . Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.

Bernard was requested to admit, inter alia, that the interest rates were provided in the promissory note at the time he and Kay signed it. Because Bernard failed to answer, the facts requested to be admitted are conclusively established as against him. See *Mason State Bank v. Sekutera,* 236 Neb. 361, 461 N.W.2d 517 (1990). However, we do not believe that these admissions are conclusive as to Kay, who denied similar requests for admissions and appeared at trial and again asserted that the interest rates were added without her knowledge.

Nebraska has never before addressed the issue of whether one party's admissions under rule 36 are binding against a codefendant. In substance, rule 36 is the Nebraska counterpart to Fed. R. Civ. P. 36. *Wibbels v. Unick,* 229 Neb. 184, 426 N.W.2d 244 (1988). Therefore, we turn to federal decisions construing Fed. R. Civ. P. 36 for guidance on this issue.

The federal courts have almost unanimously concluded that a rule 36 admission is not binding against a codefendant. In *Riberglass v. Techni-Glass Industries, Inc.,* 811 F.2d 565 (11th Cir. 1987), Riberglass filed a lawsuit against Techni-Glass to recover moneys owed on an open account. Lonnie Flippo and Howard Morris were included as codefendants because they were alleged guarantors of Techni-Glass' indebtedness. Techni-Glass and Flippo failed to respond to requests for admissions and the U.S. District Court granted summary judgment against them.

Riberglass subsequently filed a motion for summary judgment against Morris on the basis of Flippo's and Techni-Glass' rule 36 admissions. The district court granted the motion, concluding that Morris was "destined to 'rise or fall' with his coguarantor Lonnie Flippo." *Id.* at 566 n.1. The district court further concluded that the grant of summary judgment against Techni-Glass and Flippo constituted issue preclusion against Morris. *Id.* The U.S. Court of Appeals disagreed, finding that "the deemed admissions of his codefendants cannot bind Morris where he actually responded to plaintiff's requests in a timely

and legally sufficient manner." *Id.* at 566 (citing *United States v. Wheeler*, 161 F. Supp. 193 (W.D. Ark. 1958); *Community State Bank of Hayti v. Midwest Steel Erection, Inc.*, No. 76-4032, 1977 WL 1153 (D.S.D. Feb. 22, 1977); and *In re Leonetti*, 28 B.R. 1003 (E.D. Pa. 1983)). See, also, *Becerra v. Asher*, 921 F. Supp. 1538 (S.D. Tex. 1996), *aff'd* 105 F.3d 1042 (5th Cir. 1997); *Alipour v. State Auto. Mut. Ins. Co.*, 131 F.R.D. 213 (N.D. Ga. 1990); *Kittrick v. GAF Corp.*, 125 F.R.D. 103 (M.D. Pa. 1989); 8A Charles A. Wright et al., Federal Practice and Procedure § 2264 (2d ed. 1994).

Rule 36 is " 'intended to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial, the truth of which is known to the parties or can be ascertained by reasonable inquiry.' " *Wibbels v. Unick*, 229 Neb. at 188-89, 426 N.W.2d at 247-48 (quoting 8 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2252 (1970)). Kay answered the Darnalls' requests for admissions that were directed to her, and the trial court's pretrial order makes clear that the issue of whether the promissory note had been altered was to be decided at trial. In light of the foregoing authorities and the purpose behind the rule, we conclude that Bernard's admissions are not binding on Kay.

*Nebraska Uniform Commercial Code.*

■ Resolution of this case involves the interplay between several Nebraska Uniform Commercial Code sections, specifically Neb. U.C.C. §§ 3-115, 3-118, and 3-407 (Reissue 1980). The U.C.C. has been amended and recodified since the issuance of the promissory note at issue here. Changes to article 3 on negotiable instruments became operative on January 1, 1992. The transaction in question took place in 1989. The law is clear that statutes covering substantive matters in effect at the time of the transaction govern the transaction, not later enacted statutes. *Battle Creek State Bank v. Haake*, 255 Neb. 666, 587 N.W.2d 83 (1998); *Northern Bank v. Pefferoni Pizza Co.*, 5 Neb. App. 50, 555 N.W.2d 338 (1996) (citing *Ashland State Bank v. Elkhorn Racquetball, Inc.*, 246 Neb. 411, 520 N.W.2d 189 (1994)). Accordingly, unless otherwise specified, any reference to the U.C.C. will be to the 1980 reissue of the Nebraska Revised Statutes.

*Were Terms on Note When Petersens Signed It?*

We begin by addressing the issue of whether the promissory note was altered after the Petersens signed it.

Section 3-115 addresses situations where an instrument has been altered after a party has signed it. It provides:

> (1) When a paper whose contents at the time of signing show that it is intended to become an instrument is signed while still incomplete in any necessary respect it cannot be enforced until completed, but when it is completed in accordance with authority given it is effective as completed.
>
> (2) If the completion is unauthorized the rules as to material alteration apply (Section 3-407), even though the paper was not delivered by the maker or drawer; but the burden of establishing that any completion is unauthorized is on the party so asserting.

The trial court determined that the 13-percent and 18-percent interest rates were not written on the note at the time the Petersens signed it and that the Petersens had not given Gary permission to fill in those terms. The Darnalls allege that the trial court erred in this finding and contend that the overwhelming evidence proves that terms were stipulated on the note when it was signed. In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside unless clearly erroneous. *Schuelke v. Wilson*, 255 Neb. 726, 587 N.W.2d 369 (1998).

Gary testified that all of the terms were stipulated on the note at the time the Petersens signed it. Emilie testified that after the Petersens signed the note, Gary gave it to her to file away. According to Emilie, when Gary gave her the note, the interest rates were noted on the document. Both experts testified that nothing in their examinations of the document indicated that there had been an alteration of the document. However, neither expert could conclusively rule out the possibility that some of the terms were added at a later date or time.

Kay testified that when she signed the note, the blanks for the interest rates had not been filled in and that she did not give anyone authority to fill them in. According to Kay, at the time she signed the document Gary and Bernard had not agreed on

what the interest rate would be. During Bernard's deposition, he testified that the interest rates were not specified on the document when he signed it. Additionally, shortly after the Darnalls' initial demand for payment, Bernard wrote Gary a letter stating that the interest rates shown on the promissory note were not the interest rates agreed to by the parties.

In a bench trial of a law action, the court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Foiles v. Midwest Street Rod Assn. of Omaha*, 254 Neb. 552, 578 N.W.2d 418 (1998). The trial court found Kay's testimony on the alteration issues to be more credible than that of the Darnalls. While we may have reached a different conclusion if we were reviewing the evidence de novo, we cannot say that the trial court's factual findings on these issues are clearly erroneous.

*Material Alteration.*

Section 3-407 provides:

(1) Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in

. . . .

(b) an incomplete instrument, by completing it otherwise than as authorized . . . .

. . . .

(2) As against any person other than a subsequent holder in due course

(a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense;

(b) no other alteration discharges any party and the instrument may be enforced according to its original tenor, or as to incomplete instruments according to the authority given.

The trial court found that the alterations were unauthorized but determined that the changes were not done fraudulently. Kay's cross-appeal asserts that the changes were both material and fraudulent and contends that the trial court erred in not dis-

charging her from any obligation under the note. Kay is obviously contending that the trial court's finding in this regard was clearly erroneous. See *Schuelke v. Wilson, supra.* We do not agree.

The changes were clearly material. As we have already determined, the changes were made after the execution of the note and without the Petersens' authority. See § 3-407(1)(b). However, a material alteration does not discharge a party from his or her obligation unless it is made for a fraudulent purpose. See § 3-407(2)(a) and (b).

> An alteration is fraudulent when the holder intends to achieve an advantage for himself to which he has reason to know he is not entitled. Thus, where the holder believes that the party has authorized or consented to the alteration or completion, the fact that no such consent or authorization actually exists does not make the alteration fraudulent. Likewise, where the holder believes that he has the right to alter the instrument to reflect the true agreement of the parties, it is not fraudulent.

4 William D. Hawkland & Lary Lawrence, Uniform Commercial Code Series § 3-407:07 at 741 (1994).

Although Kay proved that the note was altered, she presented no evidence that the alteration was made for a fraudulent purpose. In fact, in her pleadings Kay did not allege that the alteration was fraudulently made and did not pray that she be discharged from her obligation. Rather, she alleged merely that the note had been materially altered and prayed that the court find that the Darnalls were entitled to collect the principal only.

Cases are heard in the state appellate courts on the theory upon which they are tried. An issue not presented to the trial court may not be raised on appeal, inasmuch as a lower court cannot commit error in resolving an issue it was never given an opportunity to resolve. *Myers v. Nebraska Equal Opp. Comm.,* 255 Neb. 156, 582 N.W.2d 362 (1998). Moreover, the trial court's factual finding that the alterations were not fraudulent is not clearly erroneous. Accordingly, the trial court did not err in failing to discharge Kay from her obligations under the note, and Kay's cross-appeal is without merit.

*Effect of Nonfraudulent Material Alteration.*

The Darnalls argue that the trial court's factual conclusions regarding the alteration of the interest rates rendered its usury analysis unnecessary and, as a matter of law, incorrect. We agree.

█ To review, the court concluded as a matter of fact that the interest "blanks" had been filled in without the authority of Kay. Under § 3-407(1)(b), this was a material alteration. The court also concluded the alteration was not a fraudulent one. Therefore, the provisions of § 3-407(2)(a) do not come into play to discharge the parties. It was at this juncture that the trial court, determining that the 18-percent default rate was usurious, found that the Darnalls could recover no interest under the note. However, as the Darnalls correctly point out, when a note is materially altered but not fraudulently so, the instrument may be enforced according to its original tenor, or as to incomplete instruments according to the authority given. § 3-407(2)(b). The trial court found that the interest figures were inserted without Kay's authorization and knowledge. However, the Darnalls were still entitled, under these findings, to enforce the note according to its "original tenor." *Id.*

The "original tenor" of the note at issue, considering the trial court's findings, was one with no interest rates stated, only blank spaces. The 18-percent default rate becomes ineffective for any purpose. Accordingly, the trial court's factual findings render the usury defense based on that 18-percent interest rate inapplicable as a matter of law. The trial court erred in applying usury to defeat the Darnalls' claim for interest. Because of this, we need not address the parties' arguments on whether the 18-percent interest was usurious under the circumstances of this case. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994) (holding appellate court need not address issues unnecessary to its decision). The remaining issues are whether any interest is allowed by law under these circumstances and, if so, at what rate.

*Interest and Rate.*

Section 3-118(d) of the U.C.C. provides in pertinent part: "Unless otherwise specified a provision for interest means interest at the judgment rate at the place of payment from the

date of the instrument, or if it is undated from the date of issue."
A similar provision appears in the 1992 amendments to the
U.C.C. in a slightly different form at Neb. U.C.C. § 3-112(b)
(Reissue 1992), providing, inter alia, "If an instrument provides
for interest, but the amount of interest payable cannot be ascer-
tained from the description, interest is payable at the judgment
rate in effect at the place of payment of the instrument and at
the time interest first accrues."

■ Official comment 5 of § 3-118 provides, "The revision of
the original section 17(2) [of the Uniform Negotiable
Instruments Law] is intended to make it clear that where the
instrument provides for payment 'with interest' without speci-
fying the rate, the judgment rate of interest of the place of pay-
ment is to be taken as intended." See, also, *Praest v. Quesner*,
113 Neb. 485, 488-89, 203 N.W. 549, 550 (1925) (prior to adop-
tion of U.C.C., court held that "a promissory note, which, by its
terms, provides for interest without any specified rate, bears
interest at the [statutory] rate of 7 per cent. per annum from its
date"); *Hornstein v. Cifuno*, 86 Neb. 103, 125 N. W. 136 (1910)
(where blanks for interest were not filled in, court found that
note bore interest at statutory rate); 4 William D. Hawkland &
Lary Lawrence, Uniform Commercial Code Series § 3-115:06
at 199 (1994) (observing, "If the instrument provides that it is
payable 'with interest at the rate of ——,' subsection 3-118(d)
provides that interest is at the judgment rate . . .").

Kay asserts that the Darnalls' reliance on *Praest* and
*Hornstein* "is a blatant attempt to mislead this court." Brief for
appellee on cross-appeal at 26. Kay argues that the rules as set
forth in those cases were expressly overruled by *Lovelace v.
Stern*, 207 Neb. 174, 297 N.W.2d 160 (1980). In support of her
argument, Kay provides quotes from *Lovelace*. Unfortunately,
the language relied upon is that of a concurring opinion, not the
majority opinion. Kay fails to mention that rather crucial dis-
tinction in her argument. The majority in *Lovelace v. Stern*, 207
Neb. at 177, 297 N.W.2d at 163, stated:

> [A]s a general rule, a written instrument which provides
> for payment of interest on an unpaid balance, but without
> specifying the rate, carries interest at the legal rate pre-
> scribed by law. See, *Hornstein v. Cifuno*, 86 Neb. 103, 125

N.W. 136 (1910); *Praest v. Quesner,* 113 Neb. 485, 203 N.W. 549 (1925); *Bank v. Roberts,* 168 N.C. 473, 84 S.E. 706 (1915).

Kay's vigorous attack on the Darnalls' use of the *Praest* and *Hornstein* cases is misguided.

In the language of § 3-118(d), the original tenor of the note in question, giving effect to the trial court's findings, is one that contained a "provision for interest" but no stated rate of interest. In the words of the general rule announced in *Praest* and quoting from *Lovelace,* 207 Neb. at 177, 297 N.W.2d at 163, the instrument "provides for payment of interest . . . without specifying the rate." Only by ignoring the clear language of § 3-118(d), the comments to that section, the conclusion of notable commentators on the subject, and the general rule announced in *Lovelace* could we reach any conclusion under the facts as found by the district court other than this note bears interest "at the judgment rate at the place of payment from the date of the instrument." § 3-118(d).

Having determined that the district court erred in not awarding interest, we must now determine what the appropriate rate of interest should be. The note was dated January 26, 1989, and the place of payment was Harrisburg, Nebraska. See § 3-118(d). On January 26, the judgment rate of interest was 10.16 percent. Thus, interest accrued at the rate of 10.16 percent on the unpaid balance from and after January 26, and the judgment should be modified to include it.

*Costs.*

The Darnalls next argue that the trial court erred in assessing costs against them.

Neb. Rev. Stat. § 25-1708 (Reissue 1995) provides, "Where it is not otherwise provided by this and other statutes, costs shall be allowed of course to the plaintiff, upon a judgment in his favor, in actions for the recovery of money only . . . ."

Given our disposition of the case, we find that the court erred in not awarding costs to the Darnalls.

*Remaining Arguments.*

The Darnalls have raised several arguments in their brief that were not assigned as errors. Since they failed to assign them as

errors, we will not address them. See *Miller v. City of Omaha*, 253 Neb. 798, 573 N.W.2d 121 (1998) (holding errors which are argued but not assigned will not be considered by appellate court).

## CONCLUSION

The trial court's finding that the promissory note was altered without any authority after Kay signed it was not clearly erroneous. However, the trial court's finding that the Darnalls did not fraudulently alter the instrument was also not clearly wrong, and therefore the Darnalls were entitled to enforce it according to its original terms. Since the promissory note provided for interest but did not specify a rate, the interest rate is the judgment rate at the place of payment from the date of the instrument. That rate in this case was 10.16 percent. Costs were erroneously assessed against the Darnalls instead of against Kay. The matter is remanded with directions to enter judgment for the Darnalls consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.